UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADHA GEISMANN, M.D., P.C.,

                    Plaintiff,                              Case No. 14 Civ. 7009 (LLS) (KNF)

          v.

ZOCDOC, INC., et al.,

                    Defendants.

**MEMORANDUM IN SUPPORT OF ZOCDOC INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**

**Table of Contents**

**Page**

I.  Allegations ........................................................................................................... 2

II.  Legal Standard ................................................................................................... 2

III.  Argument ............................................................................................................ 3

    A.  The Complaint should be dismissed because Geismann failed to seek leave to file an amended complaint ................................................................... 3

    B.  The Complaint should be dismissed because Geismann's claims were mooted by ZocDoc's offer of judgment ................................................... 4

    C.  To the extent it relies on ZocDoc's alleged failure to include an opt-out notice, Count I should be dismissed because ZocDoc substantially complied with the TCPA ................................................................................ 9

    D.  Count II should be dismissed because it fails to state a claim for conversion ......................................................................................................... 10

    E.  Even if it is not dismissed, this case should be stayed pending resolution of petitions before the FCC that could substantially impact the outcome ............... 15

IV.  Conclusion ......................................................................................................... 20

## <u>Table of Authorities</u>

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
677 F.3d 60 (2d Cir. 2012)..............................................................................2

*Ashcroft v. Iqbal,*
556 U.S. 662 (May 18, 2009) ......................................................................2, 3

*Autobahn Specialists, Inc. v. Soc. UPS, LLC,*
2012 U.S. Dist. LEXIS 133107 (W.D. Mo. Sept. 18, 2012) ..................... 14

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,*
2000 U.S. Dist. LEXIS 1438 (S.D.N.Y. 2000)......................................... 11

*Baxter v. Strickland,*
381 F. Supp. 487 (N.D. Ga. 1974) ............................................................4

*BLD Prods., LLC v. Viacom, Inc.,*
2011 U.S. Dist. LEXIS 36486 (S.D.N.Y. Mar. 31, 2011) .........................2

*Burik v. Staples Contract & Commercial, Inc., et al.,*
Case No. 12-cv-10806 (D. Mass.) .......................................................... 18

*Clearbrook v. Rooflifters,*
2010 U.S. Dist. LEXIS 65128 (N.D. Ill. June 28, 2010) ......................... 17

*Damasco v. Clearwire Corp.,*
662 F.3d 891 (7th Cir. 2012) ...................................................................5

*Deposit Guaranty National Bank v. Roper,*
445 U.S. 326 (1980)...................................................................................8

*Dr. William M. Pollack v. Magna Chek, Inc.,*
Case No. 14-cv-01024 (N.D. Ill.) ........................................................... 18

*Ellis v. Tribune TV Co.,*
443 F.3d 71 (2d Cir. 2006)..................................................................... 19

*Farrar v. Hobby,*
506 U.S. 103 (U.S. 1992)........................................................................ 14

*Franco v. Allied Interstate, LLC,*
2014 WL 1329168 (S.D.N.Y. April 2, 2014) ............................................8

**Table Of Authorities**

(continued)

Page(s)

*G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*,
   871 F. Supp. 2d 763 (N.D. Ill. 2012) ........................................ 15

*G.M. Sign, Inc. v. Stergo*,
   681 F. Supp. 2d 929 (N.D. Ill. 2009) ........................................ 11

*Gaumont v. Warner Bros. Pictures*,
   2 F.R.D. 45 (D.N.Y. 1941) ........................................................ 4

*Geismann v. Aestheticare, LLC*,
   Case No. 07-cv-02575 (D. Kan.) ............................................... 1

*Geismann v. Allscripts Healthcare Solutions, Inc.*,
   Case No. 09-cv-05114 (N.D. Ill.) ............................................... 1

*Geismann v. Alma Lasers*,
   08SL-CC04126 (St. Louis County, Mo.) ................................... 1

*Geismann v. American Homepatient, Inc.*,
   Case No. 14-cv-01538 (E.D. Mo.) ............................................. 1

*Geismann v. Ansar Group, Inc.*,
   09SL-CC04279 (St. Louis County, Mo.) ................................... 1

*Geismann v. Byram Healthcare Centers, Inc.*,
   Case No. 09-cv-01980 (E.D. Mo.) ............................................. 1

*Geismann v. Contexo Media LLC*,
   Case No. 09SL-CC00237 (St. Louis County, Mo.) .................... 1

*Genesis Healthcare v. Symczyk*,
   133 S.Ct. 1523 (2013) ....................................................... 5, 6, 7, 8

*Glynn v. EDO Corp.*,
   641 F. Supp. 2d 476 (D. Md. 2009) .......................................... 11

*In re Response Card Marketing, Inc.*,
   27 F.C.C.R. 3895 (April 10, 2012) ........................................... 10

*It's Entertainment v. Choice Entertainment*,
   1991 U.S. Dist. LEXIS 18347 (S.D.N.Y. Dec. 30, 1991) ......... 10

*Kaye v. Merck & Co., Inc.*,
   2014 U.S. Dist. LEXIS 66827 (D. Conn. May 15, 2014) ........... 18

**Table Of Authorities**

(continued)

Page(s)

*Kowal v. MCI Communications Corp.,*
16 F. 3d 1271 (D.C. Cir. 1994) .................................................................................. 3

*Krzalic v. Republic Title Co.,*
314 F.3d 875 (7th Cir. 2002) .................................................................................. 10

*Landsman & Funk, P.C. v. Lorman Business Center, Inc.,*
2009 U.S. Dist. LEXIS 18114 (W.D. Wis. March 9, 2009) ..................................... 9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
676 F.3d 83 (2d Cir. 2012).......................................................................................... 3

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).................................................................................................... 5

*Magana Cathcart McCarthy v. CB Richard Ellis, Inc.,*
174 Cal. App. 4th 106 (Cal. App. 2d Dist. 2009) ..................................................... 9

*Medical West Ballas Pharmacy, Ltd. v. Richie Enterprises, L.L.C.,*
Case No. 09SL-CC05410 (St. Louis County Sept. 11, 2013)................................... 18

*Merrill Lynch Futures, Inc. v. Morici,*
1991 U.S. Dist. LEXIS 13883, (S.D.N.Y. Sept. 27, 1991)........................................ 5

*Miller v. Painters Supply & Equip. Co.,*
2011 Ohio App. LEXIS 3327 (Ohio Ct. App. Aug. 11, 2011) ................................ 17

*Nack v. Walburg,*
715 F.3d 680 (8th Cir. 2013) ........................................................................... 17, 18

*Papapanayotou v. Banca di Roma S.p.A.,*
2000 U.S. Dist. LEXIS 542 (S.D.N.Y. Jan. 21, 2000) ........................................... 13

*Physicians Healthsource, Inc. v. Purdue Pharma L.P.,*
2014 WL 518992 (D. Conn. Feb. 3, 2014) ........................................................ 17, 18

*Raitport v. Crown Kosher Meat Mkt, Inc.,*
2013 U.S. Dist. LEXIS 130459 (D.N.H. 2013) ..................................................... 19

*Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.,*
443 F. Supp. 2d 976 (N.D. Ill. 2006) ............................................................... 13. 15

*Savanna Group, Inc. v. Truan,*
2011 U.S. Dist. LEXIS 17166 (N.D. Ill. Feb. 22, 2011) ........................................ 11

**Table Of Authorities**
(continued)

Page(s)

*Sosna v. Iowa*,
419 U.S. 393 (1975) ......................................................................... 6, 7

*St. Louis Heart Center, Inc. v. Gilead Palo Alto, Inc. et al*,
Case No. 4:13-cv-00958 (E.D. Mo.) ................................................. 18

*St. Louis Heart Center, Inc. v. The Forest Pharm., Inc.*,
Case No. 4:12-cv-2224 (E.D. Mo.) ................................................... 18

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
633 F. Supp. 2d 610 (N.D. Ill. 2009) ..................................... 13, 14, 15

*U.S. Parole Commission v. Geraghty*,
445 U.S. 388 (1980) ............................................................................ 7

*Wagner Elec. Corp. v. Volpe*,
466 F.2d 1013 (3d Cir. 1972) ............................................................ 10

**Statutes**

28 U.S.C. § 2342 ...................................................................................... 17

Mo. Rev. Stat. § 407.010 ........................................................................... 5

Telephone Consumer Protection Act,
47 U.S.C. § 227 ........................................................................... *passim*

**Other Authorities**

Rest. (2d) Torts § 222A, cmt. c ................................................................ 11

**Rules**

FED. R. CIV. P. 12(b)(6) ....................................................................... 2, 13

FED. R. CIV. P. 15(a)(2) .......................................................................... 2, 3

FED. R. CIV. P. 23 .................................................................................... 7, 8

FED. R. CIV. P. 68 .................................................................................... 4, 8

Federal Rule of Evidence 201(b) ............................................................. 12

Defendant ZocDoc, Inc. ("ZocDoc") provides a service that is free to consumers and allows consumers to find a nearby doctor or dentist who accepts their insurance, see real-time availability for these doctors and dentists, and instantly book an appointment via ZocDoc.com or ZocDoc's free applications for iPhone or Android.  Plaintiff Radha Geismann, M.D., P.C. ("Geismann") is a single-doctor medical practice in St. Louis, Missouri.  Geismann apparently supplements the income of its medical practice by being a serial plaintiff across the country.  A docket search reveals that Geismann has been a plaintiff in more than 30 lawsuits in multiple jurisdictions, most of them in Missouri state court, where this case was originally filed,[1] and many of them are based on the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[2]

In this case, Geismann's Corrected First Amended Complaint (Docket Entry 39) ("Complaint" or "Compl.") alleges that it received two single-page faxes from ZocDoc in 2012 that were allegedly unsolicited and allegedly did not contain adequate opt-out notices.  But Geismann does not allege that it ever attempted to opt out.  In fact, it appears from the Complaint that Geismann never attempted to follow the clear opt-out instructions contained in the original fax on July 24, 2012 (*see* Compl., Exh. A), and then, after receiving a second fax on October 2, 2012 (*see* Compl., Exh. B), Geismann held onto the faxes for more than a year before filing this lawsuit.

---

[1]ZocDoc has already spent considerable time, money, and effort on this case, removing it to the Eastern District of Missouri (Docket Entry 1) and then seeking transfer to this Court, which was granted on August 26, 2014 (Docket Entry 32).

[2]*See, e.g., Geismann v. American Homepatient, Inc.*, Case No. 14-cv-01538 (E.D. Mo.); *Geismann v. Byram Healthcare Centers, Inc.*, Case No. 09-cv-01980 (E.D. Mo.); *Geismann v. Allscripts Healthcare Solutions, Inc.*, Case No. 09-cv-05114 (N.D. Ill.); *Geismann v. Contexo Media LLC*, Case No. 09SL-CC00237 (St. Louis County, Mo.); *Geismann v. Ansar Group, Inc.*, 09SL-CC04279 (St. Louis County, Mo.); *Geismann v. Alma Lasers*, 08SL-CC04126 (St. Louis County, Mo.); *Geismann v. Aestheticare, LLC*, Case No. 07-cv-02575 (D. Kan.).

As an initial matter, the Complaint should be dismissed or stricken because it is procedurally improper — Geismann did not seek leave to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2).   But even if the Complaint were procedurally proper, it should still be dismissed because (1) Geismann's claims were mooted by ZocDoc's offer of judgment, (2) Geismann's TCPA count fails to state a claim to the extent it alleges an inadequate opt-out notice, and (3) Geismann's conversion count fails to state a claim.   For these reasons, the Complaint should be dismissed with prejudice.   Alternatively, if the case is not dismissed, it should be stayed pending resolution of critical and relevant petitions before the Federal Communications Commission ("FCC").[3]

## I.      Allegations

Geismann alleges that ZocDoc sent Geismann two single-page, unsolicited faxes in 2012 that did not contain proper opt-out notifications under the TCPA.  (Compl. ¶ 11).   Based on those two pieces of paper alone, Geismann filed a putative class action lawsuit more than a year later. Geismann's Complaint asserts claims for: (1) violation of the TCPA in Count I, and (2) conversion in Count II.  (Compl. ¶¶ 31-58).

## II.     Legal Standard

Under Rule 12(b)(6), a court must dismiss a complaint if it does not adequately plead a claim upon which relief may be granted.   To survive Rule 12(b)(6) dismissal, a complaint must contain facts sufficient to state a claim that is plausible on its face.   *Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 65 (2d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (May 18, 2009)).   The Court "need not accept factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint."   *BLD Prods., LLC v. Viacom, Inc.*, 2011

---

[3]As set forth in ZocDoc's opposition to motion for class certification filed contemporaneously with this Motion, the Complaint's class allegations also are fatally flawed and class certification should be denied if this case is allowed to continue.

U.S. Dist. LEXIS 36486, *28-*29 (S.D.N.Y. Mar. 31, 2011).  Although it is true that the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the nonmoving party, the Complaint must be dismissed where the Court can infer from those factual allegations no more than a "mere possibility of misconduct."  *Iqbal*, 129 S. Ct. at 1950.

If the Court does not dismiss the Complaint, this matter should be stayed pending resolution of certain FCC petitions.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 96 (2d Cir. 2012).  "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Id.* at 97.

## III.   Argument

### A.   The Complaint should be dismissed because Geismann failed to seek leave to file an amended complaint.

Before examining the merits of the Complaint, the Court must determine whether it has legal effect.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), Geismann could amend its complaint only with ZocDoc's written consent (which it did not ask for or receive) or the Court's leave.  Geismann acknowledges as much in its Memorandum in Support of First Amended Motion for Class Certification when it says, "Plaintiff is also concurrently filing a motion for leave to file a Second Amended Complaint[4] in order to cite relevant federal authorities on jurisdiction and class certification."  (Docket Entry 37, p. 2).  But no such motion was filed.

This is not a matter of elevating form over substance — Geismann is required to assert the grounds for its proposed amendments, which are substantive.  *See Kowal v. MCI*

---

[4]It is unclear why Geismann refers to a "Second Amended Complaint," when no amended complaint had been filed previously.

*Communications Corp.*, 16 F. 3d 1271, 1280 (D.C. Cir. 1994) (requiring the plaintiff to articulate "particular grounds on which amendment is sought").  Contrary to Geismann's assertion in the class certification memorandum, the Complaint changes much more than the "relevant federal authorities on jurisdiction and class certification."  Most notably, the Complaint adds new John Doe defendants (Compl. ¶ 10), and it changes the proposed TCPA class definition.  (Compl. ¶ 32).[5]

Absent leave to file under the Rule 15, the Complaint is "without legal effect."  *Gaumont v. Warner Bros. Pictures*, 2 F.R.D. 45, 46 (D.N.Y. 1941); *see also Baxter v. Strickland*, 381 F. Supp. 487, 491 n. 4 (N.D. Ga. 1974) ("Generally, if an amendment to the complaint that requires leave of court is served without obtaining such leave or the opposing party's consent is served, it is without legal effect and will not be considered.").  Accordingly, the Complaint should be dismissed as improperly filed.

**B.    The Complaint should be dismissed because Geismann's claims were mooted by ZocDoc's offer of judgment.**

Even if the Complaint were properly before the Court, Geismann lacks standing because ZocDoc's offer of judgment mooted the claim.  On March 27, 2014, counsel for ZocDoc served Geismann's counsel with an offer of judgment pursuant to Fed. R. Civ. P. 68.  (*See* Accompanying Declaration of Bryan Clark in support of Motion to Dismiss).  This offer was for a total dollar amount of $6,000.00, plus reasonable attorneys' fees as determined by the Court

---

[5]The Complaint also suffers from a number of other problems, including (1) various allegations regarding ZocDoc's contacts with the state of Missouri (Compl. ¶¶ 6, 9, 22), even though this case is no longer pending in Missouri, (2) reference to "Plaintiff's state law claims" (Compl. ¶7), even though Geismann asserts only one state law claim, and (3) a proposed class definition in Count II that refers to only one of the defendants, without specifying which one. (Compl. ¶50).

related solely to Geismann's individual claim[6] and an injunction barring ZocDoc from engaging in the statutory violations alleged in this action.  *Id.*  Geismann rejected this offer.  *Id.*

Although the Complaint does not seek a sum certain in damages, there can be no doubt that ZocDoc's offer of judgment provides more relief than Geismann could reasonably expect to receive individually even if it pursued the case to judgment.  Geismann has alleged that it received two faxes that allegedly violated the TCPA.  (Compl. ¶¶ 11).  The maximum possible damages under the TCPA for these faxes would be $3,000 ($1,500 per fax).  *See* 47 U.S.C. § 227(b)(3).  And Geismann's claims for conversion likely would result in nominal (if any) damages, even if those claims were successful.  *See Merrill Lynch Futures, Inc. v. Morici,* 1991 U.S. Dist. LEXIS 13883, (S.D.N.Y. Sept. 27, 1991) (holding that nominal damages may be awarded for a technical conversion when no actual damages are shown).  Thus, ZocDoc offered Geismann ***double*** what it could reasonably hope to recover in litigation, plus fees and injunctive relief.

Article III of the Constitution limits the federal courts to deciding "cases" and "controversies."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' ***at any point during litigation***, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare v. Symczyk*, 133 S.Ct. 1523, 1528 (2013) (emphasis added); *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2012) ("[O]nce the defendant offers to

---

[6]Fees were included in the offer of judgment because Count III of the original complaint sought an award of attorneys' fees in relation to Geismann's claim under the Missouri Consumer Fraud and Deceptive Business Practices Act.  Mo. Rev. Stat. § 407.010, *et seq.*  Geismann voluntarily dismissed Count III on April 17, 2014, after the filing of ZocDoc's initial motion to dismiss.  (Docket Entry 17).  None of Geismann's remaining claims provide for an award of attorneys' fees, and the Complaint does not seek attorneys' fees.  This is further evidence that ZocDoc's offer would have provided more relief than Geismann could expect at trial.

satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because [he] has no remaining stake.").

Geismann filed a motion for class certification when it filed its initial complaint in Missouri state court, arguing that "[m]ost courts . . . have held that filing a motion for class certification with the initial petition or within a number of days after service of any settlement offer to a named plaintiff staves off offers of judgment to the named plaintiff."  (Docket Entry 1, Exh A, p. 21).  Geismann's pending motion for class certification was denied as moot by the Eastern District of Missouri on August 26, 2014, when the case was transferred to this Court. Presumably that is why Geismann has rushed to file a renewed motion for class certification despite this Court's rule requiring a pre-motion conference.  *See* Individual Practice of Jude Louis L. Stanton, at Section 2.A.  Geismann apparently fears that its latest motion, filed nearly five months after ZocDoc's offer of judgment, may come too late under even its own cited case law.  But regardless of when Geismann's motion is deemed to have been filed in relation to the offer of judgment, Geismann's argument against mooting is inconsistent with the long-established Supreme Court precedent that was reaffirmed last year in *Genesis Healthcare*.

For nearly 40 years, the Supreme Court has emphasized the actual certification decision (rather than a plaintiff's motion for class certification) as the threshold for a class to acquire independent legal standing.  In *Sosna v. Iowa*, 419 U.S. 393, 394 (1975), the Supreme Court evaluated the constitutionality of a residency requirement under Iowa divorce law.  Among the issues presented to the Court was whether the named plaintiff's claim was moot because she had satisfied the residency requirement during the pendency of the case.  *Id.*  The Court held that litigation was "saved from mootness only by the fact that ***class certification occurred prior to***

appellant's change in circumstance." *Id.* at 415 (emphasis added).  The focus was not on when the plaintiff moved for class certification but on when actual certification occurred.

The Supreme Court had the same focus five years later in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980).  The Court held that a plaintiff may only litigate the class certification issue despite loss of his personal stake in the outcome of the litigation "[w]hen the claim on the merits is 'capable of repetition, yet evading review,'"[7] or when "certification of a class [occurred] prior to expiration of the named plaintiff's personal claim." *Id.* at 389.  Again, the Supreme Court established that the key issue was whether the class certification decision had been made — not whether a motion had been filed.

In the *Genesis Healthcare* decision last year, the Supreme Court reaffirmed that — despite how some federal courts have treated the mootness doctrine — the standards set forth in *Sosna* and *Geraghty* should still govern.  In *Genesis*, the Supreme Court upheld dismissal based on mooting in a collective action under the Fair Labor Standards Act ("FLSA").  *Id.*  The Supreme Court held that "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529.  As the Supreme Court observed, "essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status ***once it is certified under Rule 23***." *Id*. at 1530 (emphasis added).  Hence, while the Supreme Court recognized a narrow "relation back" rule where a representative's claim was mooted after ***certification*** (as was the case in *Sosna*),

---

[7]In this case, Geismann cannot reasonably argue that its claim is "capable of repetition, yet evading review."  Geismann's claim is unlikely to arise again (unless it requests a fax from ZocDoc) and even if it did, Geismann could once again be made "whole" through a voluntary offer of complete relief.

Article III standing limitations require dismissal where "[t]here is simply no certification decision to which respondent's claim could have related back." *Id.*[8]

Some federal courts have held that a plaintiff can avoid mooting simply by ***moving*** for class certification, but these decisions are not supported by the relevant Supreme Court case law or common sense. It is reasonable that a certified class should have independent legal standing. But a plaintiff should not be allowed to artificially create legal standing for a class of individuals that may never be certified simply by filing a cursory motion for class certification that may be entirely without merit.

At least one court in this district has relied heavily on *Genesis* in granting a motion to dismiss based on an offer of judgment in a putative class action beyond the FLSA context. In *Franco v. Allied Interstate, LLC*, 2014 WL 1329168 (S.D.N.Y. April 2, 2014),[9] the court dismissed an individual plaintiff's Fair Debt Collection Practices Act claim on mootness grounds and denied the plaintiff's pending class certification motion. The court held that "[i]n this case, defendant here has offered to address plaintiff's harm and make plaintiff whole; other potential plaintiffs remain 'free to vindicate their rights in their own suits' despite the mootness of plaintiff's individual claim." *Id.* at *5. The same is true here — ZocDoc has offered to make Geismann whole. If there are any other putative claimants, they remain free to vindicate their

---

[8]The Supreme Court in *Genesis* also clarified its earlier opinions that had cast doubt on the propriety of "picking off" Rule 23 class representatives. The Supreme Court clarified that language in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980), to the effect that such maneuvers "frustrate the objectives of class actions" was merely *dicta*. *See Genesis*, 133 S. Ct. at 1531-32. Rather, the crucial inquiry of *Roper* was whether the plaintiff possessed "a continuing personal economic stake in the litigation, even after the defendant's offer of judgment." *Id.* at 1532 (*citing Roper*, 445 U.S. at 336).

[9]The Second Circuit has not "ruled on the effect of a Rule 68 offer made prior to resolution of a Rule 23 . . . certification motion." *Franco*, 2014 U.S. Dist. LEXIS 47077, at *7.

rights.  Because the class did not have "independent legal status" before the offer of judgment was made, Geismann's case must now be dismissed.

**C.     To the extent it relies on ZocDoc's alleged failure to include an opt-out notice, Count I should be dismissed because ZocDoc substantially complied with the TCPA**.

Even if Geismann's claim were not moot, the Court should dismiss Count I to the extent it seeks relief based on ZocDoc's alleged failure to include an opt-out notice.  To meet the requirements of the TCPA, an opt-out notice must: (1) be clear and conspicuous and on the first page of the fax, (2) state that the recipient may make an opt-out request, (3) explain that the sender must comply with the opt-out in the shortest reasonable time, (4) explain what must be included in a valid opt-out, (5) include a domestic contact telephone and fax machine number, as well as a cost-free opt-out mechanism, and (6) comply with the technical requirements of the TCPA.    47  U.S.C.  § 227(b)(2)(D).    Substantial  compliance  with  the  TCPA's  opt-out requirements is a valid defense.  *See Landsman & Funk, P.C. v. Lorman Business Center, Inc*., 2009 U.S. Dist. LEXIS 18114, *16 (W.D. Wis. March 9, 2009) (holding that a defendant's opt-out notice was sufficient even though it did not strictly comply with the statutory requirements); *Magana Cathcart McCarthy v. CB Richard Ellis, Inc*., 174 Cal. App. 4th 106, 112 (Cal. App. 2d Dist. 2009) (reversing trial court's summary judgment ruling on procedural grounds but noting trial court's holding that "substantial compliance is a defense to a claim for failure to comply with the opt-out mechanisms of the statute").[10]

---

[10]A petition was filed with the FCC on March 28, 2014, asking the commission to find, among other things, that opt-out notices in substantial compliance with the TCPA are not actionable. *See Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338, at p. 8; *see also* ZocDoc's argument to stay proceedings, Section III.E, *infra*.

The two faxes at issue in this case contain opt-out notices.  (Compl., Exh. A and  B).  The faxes state:  "To stop receiving faxes, please call (866) 975-3308."  *Id.*  Any reasonable person would know how to avoid future faxes.  (Geismann never opted out — rather, it collected the faxes to file this lawsuit.)  The notice is clear and conspicuous, it is on the first page of the fax, it tells the recipient how to opt out, and it provides a domestic, cost-free option for opting out.  To award damages because the faxes do not contain more detailed information about the opt-out process would elevate form over substance.  The Court should find that the faxes substantially complied with the opt-out requirements and that Count I (to the extent it contains opt-out notice allegations) should be dismissed, with prejudice.[11]

### D.    Count II should be dismissed because it fails to state a claim for conversion.

The Court also should dismiss Count II because it fails to state a claim for conversion.  "The elements of conversion are (1) plaintiff's legal ownership or an immediate superior right of possession to specific, identifiable personal property and (2) defendant's exercise of unauthorized dominion over the thing in question to the exclusion of plaintiff's rights."  *It's Entertainment v. Choice Entertainment*, 1991 U.S. Dist. LEXIS 18347, *29 (S.D.N.Y. Dec. 30, 1991).

---

[11]Although Geismann may argue to the contrary, the FCC's reasoning in *In re Response Card Marketing, Inc*., 27 F.C.C.R. 3895, 3897 (April 10, 2012), is not meaningful here.  First, and perhaps most importantly, the FCC's decision did not directly address the concept of substantial compliance — it was not even raised as a defense by the defendant.  Second, the case is distinguishable from the instant case because the defendant's notice was not conspicuous and on the first page of the fax.  *Id.*  That difference alone would warrant a different result.  But even if the FCC's assertion that all statutory and regulatory requirements must be met could be read as a rejection of substantial compliance, it is not entitled to any deference.  The issue of substantial compliance was not noticed for comment by the FCC, nor did the FCC receive comment on it.  As such, the FCC's pronouncement, which was the result of no public process, is not entitled to deference.  *See Krzalic v. Republic Title Co*., 314 F.3d 875, 881 (7th Cir. 2002); *Wagner Elec. Corp. v. Volpe*, 466 F.2d 1013, 1020 (3d Cir. 1972).

As an initial matter, Geismann's allegation that the faxes "effectively stole Plaintiff's employee's time" (Compl. ¶ 57) is not actionable.  Employee time is not "property" owned by Geismann.  *See G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 932 (N.D. Ill. 2009) ("Plaintiff's assertion that Defendant converted Plaintiff's employees' time fails under a conversion theory as a person's time is not a chattel over which plaintiff had the immediate and unconditional right to possess.") (internal quotation omitted); *see also Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 484 (D. Md. 2009) ("[E]mployee time cannot be the object of conversion."); *Savanna Group, Inc. v. Truan*, 2011 U.S. Dist. LEXIS 17166, *6 (N.D. Ill. Feb. 22, 2011) (same).[12]

In analyzing the remaining alleged damages, the Court should assess each type separately: (1) a tiny percentage of toner from a toner cartridge; and (2) a piece of paper with print on the front.[13]  As an overarching matter, the following portion of the Restatement (Second) of Torts should be kept in mind:  "Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value."  Rest. (2d) Torts § 222A, cmt. c; *see Bank Brussels Lambert*, 2000 U.S. Dist. LEXIS 1438, at *8-*9 (quoting and relying Section 222A of the Restatement (Second) of Torts, including Comment c).  The following six factors are to be considered in determining whether the seriousness of the interference justifies requiring ZocDoc to pay full value for the chattel: (1) extent and duration of the exercise of dominion or control; (2) ZocDoc's intent to assert a right inconsistent with Geismann's right of

---

[12]Although none of these cases is from the Second Circuit, all three relied on and adopted the Restatement (Second) of Torts, which has been used often by courts in this district as a guideline on conversion.  *See, e.g., Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 U.S. Dist. LEXIS 1438, *8-*9 (S.D.N.Y. 2000).

[13]For the purposes of this argument, ZocDoc assumes the fax machine at issue was a traditional paper-and-toner fax machine.  ZocDoc reserves the right to raise additional arguments if it subsequently learns that the faxes were received digitally.

control; (3) ZocDoc's good faith; (4) the extent and duration of the resulting interference with ZocDoc's right of control; (5) the harm done to the chattel; and (6) the inconvenience and expense caused to Geismann. *Id.*

The toner used from a toner cartridge to print two faxes is not chattel — the fax machine cartridge or the printer is the chattel, and use of a tiny percentage of the toner in that chattel is a minor interference with the overall chattel.[14]  The use does not reduce the value of the cartridge or fax machine as a whole in any meaningful way.  The extent and duration of the resulting alleged interference with Geismann's right to control the cartridge or fax machine were brief. The alleged harm done to the cartridge or facsimile machine was minimal to nonexistent.  The alleged inconvenience and expense caused to Geismann, if any, was *de minimis*.  And Geismann's own allegations even suggest that ZocDoc acted in good faith.  (*See* Compl. ¶ 26) ("Defendants did not intend to send a transmission of facsimile advertisements, including Exhibits A-B, to any person where such transmission was not authorized by law or by the recipient.").

As with the toner, there is a significant question about whether the paper in the printer is a separate chattel or whether the paper is merely a component of the printer, which is the chattel. Regardless, Geismann alleges it received only two one-sided, single-page letters.  (Compl., Exh. A and B).  The extent and duration of the alleged interference with the piece of paper was minimal.  The paper was not rendered unusable — the paper can be re-used for a future facsimile simply by flipping it over and printing on the other side.  And the inconvenience to Geismann

---

[14]The Court can take judicial notice of the basic operations of a fax machine, as discussed here and in the pages that follow.  *See* Federal Rule of Evidence 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

was minimal and free.  As with the toner, the Restatement factors as applied to the paper point toward dismissal with prejudice of the conversion count.

Geismann's claim also fails because ZocDoc never took possession of this property.  In at least one similar case, a court has recognized that the sender of a fax is not liable for conversion of the recipient's fax machines, paper, and toner because the sender never "possesses" this property.  *See Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (dismissing conversion claim where plaintiff's "property (ink, toner and paper) . . . never came into [defendant's] possession at all . . . [and] was never 'unlawfully held'" by the defendant such that defendant "could be said to have 'assumed control, dominion or ownership over the property'").  Geismann has not alleged (and cannot allege) that ZocDoc took actual possession of Geismann's fax machine.  The fax machine, paper, and toner remained at all times in Geismann's possession.  Thus, because ZocDoc never possessed or controlled Geismann's fax machine, the conversion claim fails.

Finally, even if Geismann's allegations were sufficient to state a claim for conversion, Count II should be dismissed because the alleged damages are *de minimis.  See Papapanayotou v. Banca di Roma S.p.A.*, 2000 U.S. Dist. LEXIS 542, *25 (S.D.N.Y. Jan. 21, 2000) (dismissing conversion claim where value of items at issue was *de minimis*).  The court's decision in *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 615 (N.D. Ill. 2009), aptly illustrates why the *de minimis* doctrine mandates Rule 12(b)(6) dismissal of a conversion claim based on an unwanted fax:

> For example, if the defendant takes the plaintiff's inexpensive ballpoint pen and a notebook without his permission, uses the pen and one sheet of paper from the notebook to write a short letter, and then immediately returns the remainder of the plaintiff's supplies to him, the *de minimis* doctrine would be implicated. Technically, plaintiff still would have a claim for conversion based on the loss of the ink from the pen and the missing sheet of paper that was used to write the

-13-

letter.   However, this claim would be so insignificant or trifling that the *de minimis* doctrine would bar the plaintiff from proceeding on such claim.

633 F. Supp. 2d at 615.

Although not all federal courts agree that conversion claims based on unwanted faxes are barred by the *de minimis* doctrine, many of those decisions erroneously consider the potential aggregate harm to plaintiffs' putative classes.   As *Stonecrafters* correctly noted, the aggregate harm to the putative class cannot be considered if the plaintiff's claim is *de minimis* because a plaintiff must have a valid claim itself before he can represent a class.   633 F. Supp. 2d at 614. Even if the potential damages of a class are considered, the "damages" are still a pittance.   The aggregate harm to a class of 1,000 fax recipients would be about $20, and potentially even less. *Stonecrafters*, 633 F. Supp. 2d at 617 n. 7 ("This calculation assumes a loss of $0.02 per page for each unauthorized fax advertisement.   In the Court's view, the estimate of $0.02 per page may be too generous, given the ordinary cost of paper and toner, especially if the paper is purchased in bulk.").

Some courts also mistake the critical distinction between nominal damages and the *de minimis* doctrine.   "[H]olding that any award of nominal damages renders the victory material would 'render the concept of *de minimis* relief meaningless. Every nominal damage award has as its basis a finding of liability, but obviously many such victories are Pyrrhic ones.'"   *Farrar v. Hobby*, 506 U.S. 103, 120 (U.S. 1992).   An award of nominal damages "presupposes a violation of sufficient gravity to merit a judgment, even if significant damages cannot be proved." *Autobahn Specialists, Inc. v. Soc. UPS, LLC*, 2012 U.S. Dist. LEXIS 133107, *9 (W.D. Mo. Sept. 18, 2012).   The *de minimis* doctrine bars claims where, as here, "the plaintiff has suffered no more than negligible damages from the beginning."   *Stonecrafters*, 633 F. Supp. 2d at 614.

Thus, even if the Court finds that Geismann has pled the elements of conversion, it should follow *Stonecrafters* and other well-reasoned decisions[15] and dismiss the conversion claim as *de minimis*.

      **E.**    **Even if it is not dismissed, this case should be stayed pending resolution of petitions before the FCC that could substantially impact the outcome**.

Even if the Court does not dismiss the Complaint for the reasons set forth above, this matter should be stayed because there is uncertainty about whether Geismann can pursue a cause of action based on the allegedly inadequate opt-out notice.  This issue is the subject of a number of petitions pending before the FCC.[16]  These petitions ask the FCC to modify its opt-out regulations to reflect that the opt-out requirement does not provide an independent cause of action, that the opt-out regulation is limited to ***unsolicited*** faxes, and/or that the opt-out

---

[15] *See also Rossario's Fine Jewelry*, 443 F. Supp. 2d at 980; *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012).

[16]*See, e.g., Petition of American Caresource Holdings, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (FCC June 30, 2014); *Petition of CARFAX, Inc. for Declaratory Ruling and/or Waiver of Section 64.1200(a)(4)(iv) of the Commission's Rules*, CG Docket Nos. 02-278, 05-338 (FCC July 11, 2014); *Petition of Merck and Company, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (FCC July 11, 2014); *Petition of UnitedHealth Group, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (FCC July 11, 2014) (UnitedHealth Petition); *Petition of MedLearning, Inc. and Medica, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (FCC July 16, 2014); *Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver,* CG Docket Nos. 02-278, 05-338 (FCC March 28, 2014); *Petition of Crown Mortgage Company for Declaratory Rulings and/or Waiver of the "Opt Out Requirement*, CG Docket 05-338 (FCC March 4, 2014); *Petition for Declaratory Ruling Regarding the Statutory Basis for the Commission's Opt-Out Notice Rule with Respect to Solicited Faxes, and/or Regarding Substantial Compliance with Section 64.1200(a)(4)(iii) and (iv) of the Commission's Rules*, CG Docket No. 05-338 (FCC Dec. 12, 2013); *Petition of Futuredontics, Inc. for Declaratory Ruling and/or Waiver*, CG Docket No. 05-338 (FCC Oct. 18, 2013); *In re Petition of Douglas Walburg and Richie Enterprises, LLC for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket No. 05-338 (FCC Aug. 19, 2013); *Petition for Declaratory Ruling and/or Waiver by Forest Pharmaceuticals, Inc.*, CG Docket No. 05-338 (FCC July 24, 2013); *Petition of Staples, Inc. and Quill Corporation for a Rulemaking to Repeal Rule 64.1200(a)(3)(iv) and for a Declaratory Ruling to Interpret Rule 64.1200(a)(3)(iv)*, CG Docket Nos. 02-278, 05-338 (FCC July 19, 2013).

regulation should be assessed under a substantial compliance regime.  The petitions also seek a waiver for past unintended violations of this regulation.  An FCC grant of some or all of the relief sought in these petitions would modify the FCC's regulations on this portion of the TCPA and fundamentally alter the Court's analysis.  These issues appear to be receiving significant attention from the FCC — since May 30, 2014, the FCC has issued four public notices seeking comment on these issues:

- *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338 (FCC May 30, 2014) (seeking comment on the solicited fax issue and the past unintended violation waiver issue)

- *Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rule on Opt-out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338 (FCC June 27, 2014) (seeking comment on the solicited fax issue and the waiver issue)

- *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338 (FCC July 25, 2014) (seeking comment on the solicited fax issue and the waiver issue)

- *Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rule on Opt-out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338 (FCC July 25, 2014) (seeking comment on the substantial compliance issue and the waiver issue)

The comments responding to the most recent public notice are due by September 12, 2014, and the reply comments are due by September 19, 2014.

Although the FCC has taken the position thus far that the opt-out regulations provide an independent cause of action (and some courts have followed suit), there is reason to believe that the FCC may reconsider its position — particularly with respect to ***solicited*** faxes.[17]  Courts that

---

[17]As set forth in the class certification opposition filed contemporaneously with this motion, a change in the FCC's position also would impact the class certification arguments.  *See* Section III.B.

have followed the FCC's reasoning have done so begrudgingly:  "[I]t is questionable whether the regulation at issue (thus interpreted) properly could have been promulgated under the statutory section that authorizes a private cause of action."  *Nack v. Walburg*, 715 F.3d 680, 682 (8th Cir. 2013).  The Eighth Circuit in *Nack* ruled in favor of the plaintiff only because it found "[t]he Administrative Orders Review Act ('Hobbs Act'), 28 U.S.C. § 2342, *et seq.*, precludes us from entertaining challenges to the regulation other than on appeals arising from agency proceedings." *Id.*[18]

Moreover, there is not unanimity on this issue.  At least one court has held that the opt-out regulations do not apply to solicited faxes.  *See Miller v. Painters Supply & Equip. Co.*, 2011 Ohio App. LEXIS 3327, para. 8 (Ohio Ct. App. Aug. 11, 2011) ("[P]laintiffs' proposed definition of the class was premised on the belief that all faxed advertisements contain an opt-out notice; however, the TCPA applies only to unsolicited fax advertisements.").  "Simply put, the [FCC regulations], and the opt-out notice requirements thereunder, do not apply to fax transmissions unless they constitute unsolicited advertisements."  *Id.* at para. 19; *see also Clearbrook v. Rooflifters*, 2010 U.S. Dist. LEXIS 65128, *14 (N.D. Ill. June 28, 2010) ("[T]here is little case law to support the theory that a plaintiff can proceed with a TCPA claim when he or she has explicitly consented to the fax advertisement.").  This is a reasonable interpretation of the law —allowing a claim under the TCPA when a solicited fax advertisement does not contain an opt-out notice would lead to unjust results.  If this were the law, a recidivist plaintiff could actively request fax advertisements from dozens of unwary businesses, only to threaten those

---

[18]The Second Circuit has not addressed this issue.  *See Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, 2014 WL 518992, *3 (D. Conn. Feb. 3, 2014) ("[A]lthough I am inclined to agree with the defendants that the FCC lacks authority to regulate solicited faxes pursuant to section 227(b) of the TCPA and am not entirely persuaded by the Eighth Circuit's conclusion [in *Nack*] that the Hobbs Act bars me from reaching this conclusion, given the complete lack of Second Circuit precedent on this issue, a stay seems the wiser course of action.").

entities with a TCPA lawsuit if the very fax it requested failed to contain an opt-out notice. Plaintiffs could entrap unsuspecting businesses and create a cottage industry of inducing innocent companies to violate the TCPA.  This was not the intent of Congress and the FCC.

If the FCC adopts the more reasonable interpretation of the statute, it would substantially impact the outcome of this litigation.  Various courts have stayed similar TCPA cases pending a resolution of the FCC's decision on these petitions.  *See, e.g., Kaye v. Merck & Co., Inc.*, 2014 U.S. Dist. LEXIS 66827, *6 (D. Conn. May 15, 2014) ("Staying discovery in these circumstances is consistent with the primary jurisdiction doctrine. . . .  In addition, such a stay is an appropriate exercise of the Court's inherent discretion to manage discovery to conserve judicial and litigant resources and avoid prejudice."); *Physicians Healthsource, Inc.*, 2014 WL 518992 at *4 ("The outcome of Purdue's FCC petition will affect key aspects of this litigation and the plaintiff will not be unduly prejudiced by a stay."); *St. Louis Heart Center, Inc. v. The Forest Pharm., Inc.*, Case No. 4:12-cv-2224 (E.D. Mo.) (Docket Entry 72); *Dr. William M. Pollack v. Magna Chek, Inc.*, Case No. 14-cv-01024 (N.D. Ill.) (Docket Entry 29) (partial stay); *St. Louis Heart Center, Inc. v. Gilead Palo Alto, Inc. et al*, Case No. 4:13-cv-00958 (E.D. Mo.) (Docket Entry 42); *Burik v. Staples Contract & Commercial, Inc., et al*., Case No. 12-cv-10806 (D. Mass.) (Docket Entry 90); *Medical West Ballas Pharmacy, Ltd. v. Richie Enterprises, L.L.C.*, Case No. 09SL-CC05410 (St. Louis County Sept. 11, 2013).

In fact, such a stay was expressly contemplated by the Eighth Circuit's decision in *Nack*. In remanding the case, the court noted that "the district court may entertain any requests to stay proceedings for pursuit of administrative determination of the issues raised herein," 715 F.3d at 687, and the district court stayed the *Nack* case on September 12, 2013, so that the defendant could seek relief from the FCC.  *See Nack v. Walburg*, Case No. 4:10-cv-00478 (E.D. Mo.)

(Docket Entry 61).  Courts have stayed proceedings of this nature even when the defendant has not filed a petition with the FCC because the pending administrative proceedings will have a "substantial effect" on the disposition of such cases.  *See Raitport v. Crown Kosher Meat Mkt, Inc.*, 2013 U.S. Dist. LEXIS 130459, *2 (D.N.H. 2013).

In staying these proceedings, courts have invoked the "primary jurisdiction doctrine," which is a common-law doctrine that is "concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'"  *Ellis v. Tribune TV Co*., 443 F.3d 71, 81 (2d Cir. 2006).  "Whether there should be judicial forbearance hinges therefore on the authority Congress delegated to the agency in the legislative scheme."  *Id.*  In determining whether to apply the primary jurisdiction doctrine, the Court should look at:

> (1)   whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2)   whether the question at issue is particularly within the agency's discretion;
>
> (3)   whether there exists a substantial danger of inconsistent rulings; and
>
> (4)   whether a prior application to the agency has been made.

*Id.* at 82-83.

Here, although the opt-out issue does not necessarily involve technical or policy considerations that are exclusively within the FCC's field of expertise, this is a matter that Congress has placed in the FCC's discretion.  Moreover, the volume of cases that already have been stayed on this same issue demonstrates that a stay would promote consistency and uniformity, as there is a substantial risk of inconsistent rulings based on the many petitions pending before the agency.  Thus, if the Court does not dismiss this case outright, it should exercise its power to stay this case pending a resolution of the relevant petitions before the FCC.

**IV.     Conclusion**

For the foregoing reasons, the Complaint should be dismissed, with prejudice.  If the case

is not dismissed, it should be stayed pending resolution of the relevant issues pending before the

FCC.

Respectfully submitted,

**ZOCDOC, INC.**

By:    */s/ Charles J. Nerko*

One of Its Attorneys

Charles J. Nerko
cnerko@vedderprice.com
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, New York 10019
T:  +1 (212) 407 7700
F:  +1 (212) 407-7799

Blaine C. Kimrey
(*pro hac vice* motion pending)
bkimrey@vedderprice.com
Bryan K. Clark
(*pro hac vice* motion pending)
bclark@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois  60601
T:  +1 (312) 609-7500
F:  +1 (312) 609-5005

Dated:  September 11, 2014