## IN THE UNITED STATES COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RADHA GEISMANN, M.D., P.C., individually and on behalf of all others similarly-situated, | ) ) | |
| Plaintiff, | ) ) ) | Case No.: 1:14-cv-07009 (LLS) (KNF) |
| v. | ) ) | Hon. Louis L. Stanton |
| ZOCDOC, INC., and JOHN DOES 1-10, | ) ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY

Plaintiff, Radha Geismann, M.D., P.C., individually and on behalf of all others similarly situated, by and through its undersigned counsel, states the following for its Memorandum in Opposition to Defendant's Motion to Dismiss and Alternative Motion to Stay.

### Background

The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C), forbids the use of "any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine."  47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the act and regulations, and provides for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations. 47 U.S.C. § 227(b)(3)(A)-(B); *All Am. Painting, LLC v. Fin. Solutions & Assocs.*, 315 S.W.3d 719, 722 (Mo. 2010). Additionally, the TCPA provides that treble damages may be assessed if in the court's discretion the defendant willfully or knowingly violated the act. 47 U.S.C. § 227(b)(3); *All Am. Painting*, 315 S.W.3d at 722-23.

On July 24, 2012 and October 2, 2012, Defendant ZocDoc, Inc. ("Defendant" or "ZocDoc") sent unsolicited facsimile advertisements to Plaintiff in St. Louis County, Missouri, in violation of the

TCPA.  On January 10, 2014, Plaintiff filed a Class Action Complaint in the Circuit Court of St. Louis County, Missouri, alleging claims for, *inter alia*, violation of the TCPA.  (Doc. 1-1).[1]  Also on January 10, 2014, Plaintiff filed a Motion for Class Certification.  (Doc. 1-1).  On March 13, 2014, ZocDoc removed this case to the Eastern District of Missouri.  (Doc. 1).  On that same day, March 13, 2014, Plaintiff filed in the Eastern District of Missouri its Motion for Class Certification made in the state court proceeding.  (Doc. 5).  On March 27, 2014, ZocDoc made an offer of judgment to Plaintiff, pursuant to Federal Rule of Civil Procedure 68, for $6,000.00 and entry of an injunction "barring ZocDoc from engaging in the statutory violations alleged in this action."  (Doc. 46-1).  Plaintiff was given fourteen days to accept the offer, pursuant to Rule 68.  (*Id.*).  On April 8, 2014, Plaintiff, citing its obligations to the class, rejected the offer to settle on an individual basis.  (Doc. 46-2).

On April 18, 2014, ZocDoc filed a Combined Motion to Transfer, Dismiss or Stay (Doc. 11, 16), and a Motion to Strike Class Allegations (Doc. 13, 14). On August 26, 2014, the Eastern District of Missouri (Judge Perry) granted Defendant's Motion to Transfer to this Court and denied as moot, "to be re-raised if appropriate," the following: (i) Defendant's Combined Motion to Dismiss or Stay, (ii) Defendant's Motion to Strike Class Allegations, (iii) Plaintiff's Motion to Certify Class, and (iv) Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Strike.  (Doc. 32 at 11).  On August 28, 2014, Plaintiff filed in this Court a Corrected First Amended Class Action Complaint ("FAC") (Doc. 38), which was thereafter again corrected in a filing on September 3, 2014. (Doc. 39).  Also on August 28, 2014, Plaintiff filed a Notice of First Amended Motion for Class Certification and a Memorandum in Support of First Amended Motion for Class Certification.  (Doc. 36, 37).

---

[1] Plaintiff intends to voluntarily dismiss its claim for conversion.  Accordingly, this Opposition Memorandum addresses Defendant's Rule 12(b)(6) motion to dismiss and Defendant's alternative Motion to Stay.

ZocDoc now asks the Court to dismiss the FAC, pursuant to Rule 12(b)(6), for the following reasons:  (1) Plaintiff did not seek leave of the Court to file the FAC and therefore it should dismissed as improperly filed; (2) Plaintiff's TCPA claim was mooted by the March 27, 2014 offer of judgment; and (3) Plaintiff's TCPA claim fails to the extent it relies on the opt-out notice requirement because ZocDoc  "substantially complied" with that requirement.  In the alternative, ZocDoc asks the Court to stay this proceeding pending resolution by the Federal Communications Commission (FCC) of petitions challenging the opt-out notice requirement.

ZocDoc's Motion to Dismiss should be denied in its entirety, as should its request to stay this case.  First, Plaintiff does not dispute it did not first seek leave of the Court to file its FAC or have a pre-filing meeting with the Court.  Plaintiff respectfully requests that the Court grant Plaintiff leave to file the FAC *nunc pro tunc* as of September 3, 2014, and that the Court treat the FAC as the operative complaint in this matter, as ZocDoc has done in its Motion to Dismiss.  Second, it is undisputed ZocDoc's Rule 68 offer of judgment was made <u>after</u> Plaintiff had filed its Motion for Class Certification while the case was pending in state court in Missouri and thereafter in the Eastern District of Missouri.  In order to ensure against a pick-off attempt in this Court, Plaintiff filed its Notice of First Amended Motion for Class Certification and a Memorandum in Support of First Amended Motion for Class Certification. (Doc. 36, 37), and thereafter requested a conference with the Court regarding said Motion. (Doc. 52)  ZocDoc has offered no case authority for the proposition that a putative class action plaintiff's claim is mooted by a Rule 68 offer that comes <u>after</u> a motion for class certification is already pending.  Third, ZocDoc did not substantially comply with the opt-out notice requirements, nor is "substantial compliance," even if it was present, a defense that defeats a TCPA claim.  Fourth, ZocDoc has not come close to satisfying the requirements for this Court to enter a stay, nor has the ZocDoc filed a petition with the FCC challenging the opt-out notice regulation.

<u>**Standards on a Rule 12(b)(6) motion to dismiss**</u>

3

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, courts first accept all of the allegations in the complaint as true, but do not accept as true legal conclusions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Tocco v. Real Time Resolutions, Inc.*, 2014 WL 3964948, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to entitlement to relief.'" *Tocco*, 2014 WL 3964948, at *1 (citations omitted). Furthermore, courts may consider documents attached to the complaint or incorporated by reference into the complaint as well documents of which it can take judicial notice. Id. Finally, when deciding a Rule 12(b)(6) motion to dismiss, a court not only accepts all material facts alleged as true, it also draws all reasonable inferences in favor of plaintiff. *JTE Enterprises, Inc. v. Cuomo*, 2014 WL 639423, at *4 (E.D.N.Y. Feb. 15, 2014).

<u>Argument</u>

**I.     Plaintiff requests that the Court grant it leave to file the FAC *nunc pro tunc* as of the date of filing (August 28, 2014) and that the Court treat the FAC as the operative complaint in this matter.**

ZocDoc argues Plaintiff's FAC should be dismissed because Plaintiff filed it without first seeking leave of the Court. (Def.'s Mem. at 3, 4). In an effort to support its argument, ZocDoc further states the FAC adds John Doe defendants and also changes the proposed TCPA class definition. (*Id.* at 4). ZocDoc's request to dismiss on this basis should be rejected.

New York federal courts have granted plaintiffs leave to file an amended complaint *nunc pro tunc* from the date of filing even though plaintiff failed to request leave to amend pursuant to Rule 15(a)(2) if the district court would have granted leave to amend had it been so requested. For example, in *Shariff v. Amanda Realty, Inc.*, 2013 WL 5522444, at *1 (E.D.N.Y. Sept. 30, 2013), defendant sought

to vacate a default on the basis that plaintiff filed his second amended complaint without first obtaining leave of the court and because defendant was never properly made a party to the case.  The court first discussed motions for leave to amend under Rule 15(a)(2), noting that leave to amend under should be "freely given," that this "directive" has been liberally construed, and that the decision as to whether to allow leave to amend is within the court's discretion.  *Id.* at *4.  The court noted an amendment should not be allowed where there has been bad faith or dilatory motives or where the amendment would cause undue delay or undue prejudice to the opposing party.  *Id.* (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  To determine whether an amendment would cause undue prejudice, courts consider whether the amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.. *Shariff*, 2013 WL 5522444, at *4 (citations omitted).  Significantly, mere delay without a showing of bad faith or prejudice is not sufficient grounds to deny leave to amend.  *Id.*; *United States v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1254-55 (2d Cir. 1989).

In *Shariff*, the court gave plaintiff leave to file his second amended complaint *nunc pro tunc* based on the court's determination that it was clear that had leave been sought, it would have been granted. *Shariff*, 2013 WL 5522444, at *5 (citing *U.S. Flour Corp. v. Certified Bakery, Inc.*, 2012 WL 728227, at *1 (E.D.N.Y. Mar. 6, 2012) (accepting plaintiff's second amended complaint filed without leave of court as operative complaint because leave should be freely granted when justice requires); *Care Envtl. Corp. v. M2 Techs., Inc.*, 2006 WL 1896326, at *2-3 (E.D.N.Y. July 10, 2006) (declining to strike plaintiff's amended complaint that had been filed without permission where plaintiff would have prevailed on motion to amend).  The *Shariff* court stated there were no allegations of bad faith, dilatory motive or

5

undue prejudice to the party opposing the amendment, nor was there any other sufficient cause to deny leave to amend. *Shariff*, 2013 WL 5522444, at *6.

In the instant case, there has been no bad faith, dilatory motive, nor will ZocDoc suffer any undue prejudice should Plaintiff be allowed to file the FAC. This case has just been transferred to this Court and ZocDoc has yet to answer the FAC, instead opting to move to dismiss or in the alternative, to stay this case. The naming of "John Doe" defendants in the FAC (which may be third party marketers) similarly does not prejudice the ZocDoc as the identity of such defendants would not be obtained (if they exist) until such time as discovery commences. As to the TCPA class definition, one word has been changed. Plaintiff's original class definition was as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendant any telephone facsimile transmissions of material making known the commercial existence of, or making qualitative statements regarding any property, goods, or services (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship *and* (5) which did not display a proper opt out notice.

(Compl., Doc. 1-1, at ¶ 30). The only change in the new definition is to change the bold-faced/italicized *and* to "or." That's it. (*See* Doc. 39, at ¶ 32). Under such circumstances, ZocDoc cannot make the requisite showing of undue prejudice. Plaintiff has also submitted a letter to the Court (Doc. 52) requesting a pre-motion conference in accordance with this Court's procedures to seek permission to file the FAC. Accordingly, Plaintiff respectfully requests that the Court grant it leave, *nunc pro tunc* as of September 3, 2014, to file the FAC and that the FAC be treated as the operative complaint in this action. Alternatively, Plaintiff seeks permission to file a motion to seek leave to file the FAC.

## II. Defendant's argument that Plaintiff's case is moot based on a Rule 68 offer of judgment fails.

### A. Plaintiff filed its motion for class certification before Defendant's Rule 68 offer of judgment, thereby defeating any attempted pickoff.

ZocDoc claims that Plaintiff lacks standing because Defendant's March 27, 2014 offer of judgment pursuant to Rule 68 mooted Plaintiff's claim. (Def.'s Mem. at 4). As stated, Plaintiff rejected the offer on April 8, 2014 (Doc. 46-2), and the offer would have expired by its own terms 2 days later. It is undisputed Plaintiff's motion for class certification was initially filed in the state court proceeding in Missouri on January 10, 2014, and was thereafter refiled in the Eastern District of Missouri on March 13, 2014, after the case was removed. ZocDoc argues the pendency of the motion for class certification prior to the service of the Rule 68 offer doesn't matter because "for nearly 40 years, the Supreme Court has emphasized the actual certification decision (rather than a plaintiff's motion for class certification) as the threshold to acquire independent legal standing." (Def.'s Mem. at 6). In other words, according to ZocDoc, a Rule 23 plaintiff can be picked off with a Rule 68 offer of judgment at any time prior to a ruling on class certification, regardless of whether a motion for class certification was filed prior to said Rule 68 offer. ZocDoc is wrong.

Initially, it must be noted that ZocDoc cites to no case in which a court allowed a pick-off attempt after the plaintiff had moved for class certification. For example, in *Franco v. Allied Interstate, LLC*, 2014 WL 1329168, at *1 (S.D.N.Y. April 2, 2014), relied on by ZocDoc, (Def.'s Mem. at 8), the Rule 68 offer of judgment was sent on September 10, 2013, and plaintiff did not move for class certification until January 24, 2014. The court stated that "neither the Supreme Court nor the Second Circuit has ruled on the effect of a Rule 68 offer made prior to resolution of a Rule 23 (rather than FLSA) certification motion." *Id.* at *3. The court further recognized "district courts in this Circuit are split on the question of whether an offer of judgment to an individual plaintiff made while a certification motion is pending or before a certification motion is filed moots the putative class action." *Id.* (emphasis added). The court explained that as to the courts that do dismiss such class actions, it is most commonly before a class certification motion was filed. *Id.* (emphasis added). The court further noted other courts have held that a case should be dismissed as moot only if plaintiff

lacked a reasonable opportunity to file a class certification motion prior to the Rule 68 offer. *Id.* The *Franco* court found the former line of cases more persuasive and held that the Rule 68 offer made before a class certification motion was filed mooted the class action plaintiff's claim. *Id.* at *4.

The court in *Tocco v. Real Time Resolutions*, 2014 WL 3964948, at *5 (S.D.N.Y. Aug. 13, 2014), was also faced with the issue of whether a Rule 68 offer mooted plaintiff's claim in a putative class action. In *Tocco*, plaintiff had requested permission to move for class certification before any Rule 68 offer was made. *Id.* The court treated plaintiff's request as a motion for class certification and found the Rule 68 offer did not moot plaintiff's claim and denied defendant's motion to dismiss, stating: "If a Rule 68 offer made before a plaintiff had a reasonable time to move for class certification could not moot a claim (which the court had previously held in an earlier case), then by extension a Rule 68 offer made after the plaintiff has moved for class certification should not do so." *Id.* The court distinguished *Franco*, stating:

> But timing is a key consideration in analyzing Rule 68 offers. *See Franco*, 2014 WL 1329168, at *3 (noting that courts have been more comfortable dismissing putative class actions as moot where a Rule 68 offer has been made and the plaintiff has not moved for class certification.) The plaintiff in *Franco* only moved for class certification after a Rule 68 offer had been made. *Franco*, 2014 WL 1329168, at *1. Tocco's claim stands on different footing.

*Tocco*, 2014 WL 3964948, at *5

And in *Vadai v. Dun & Bradstreet Credibility Corp.*, 2014 WL 4436325, at *1 (S.D.N.Y. Sept. 2, 2014), this Court addressed the issue of a Rule 68 offer made <u>before</u> plaintiff had filed a motion for class certification (without requesting a pre-motion conference). The Court dismissed the motion for class certification without prejudice for failure to comply with the pre-motion conference requirement, and then dismissed plaintiff's claim as moot as a result of the Rule 68 offer, relying in part on *Franco*, discussed above. *Id.* at *1.

In *Franco* and *Vadai*, the Rule 68 offer of judgment was made prior to the filing of the motion for class certification. In the instant case, Plaintiff's original motion for class certification was filed fin

Circuit Court in St. Louis County, Missouri (on January 10, 2014) and thereafter, in the Eastern District of Missouri on March 13, 2014, both filings prior to the March 27, 2014 Rule 68 offer.  (Docs. 1, 5). Accordingly, Plaintiff's claim is not mooted. *Tocco*, 2014 WL 3964948, at *5.  While certain courts hold the better rule is that a case should be dismissed as moot only if plaintiff lacked a reasonable opportunity to file a class certification motion prior to the Rule 68 offer[2], Defendant has pointed to no authority dismissing as moot a putative class action plaintiff's claim where the motion for class certification <u>precedes</u> the Rule 68 offer. ZocDoc quotes from *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011) for the proposition that "[O]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake."  (Def.'s Mem. at 5, 6).  However, the Seventh Circuit in *Damasco* also stated that class-action plaintiffs can avoid pick-offs by "mov[ing] to certify the class at the same time that they file their complaint" and that "[t]he pendency of that motion protects a putative class from attempts to buy off the named plaintiffs."  *Id.* at 896.

Although the Seventh Circuit has itself called into question its approach to pickoffs in light of the dissent by Justice Kagan in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), *see infra*, even *Damasco* would clearly require denial of ZocDoc's Motion to Dismiss based on mootness. Moreover, to permit ZocDoc to pick-off Plaintiff after a motion for class certification was filed (or during the pendency of a pre-motion request for conference for permission to file a motion for class certification) would defeat the purposes of Rule 23.  Under such a scenario, Rule 23 class actions would become a nullity as defendants would be permitted to simply pick-off all class representatives *seriatum.*

---

[2] At least three circuit courts have held that if a plaintiff makes a class certification motion without "undue delay," the fact that a defendant may make a Rule 68 offer of judgment which satisfies the plaintiff's individual claims before the plaintiff actually files the class certification motion does not moot the case or prevent the plaintiff from moving forward to represent the class. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Lucero v. Bur. of Collection Recovery, Inc.*, 639 F.3d 1239, 1249–50 (10th Cir. 2011); *Weiss v. Regal Collections*, 385 F.3d 337, 347–48 (3d Cir. 2004).

It is also worth noting that when ZocDoc's Rule 68 offer was served, the case was pending in the Eastern District of Missouri. In the Eighth Circuit, an offer of judgment to a named plaintiff in a class action will moot the case "only where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996). This rule "protects a class representative's responsibilities to the putative class members from being terminated by a defendant's attempts to pay off the representative's claims." *Id.* In *Alpert*, for example, the plaintiff moved for class certification, the district court denied the motion on procedural grounds, and the defendants made an offer of judgment. *Id.* The Eighth Circuit held that the plaintiff "was not required to accept" the offer because class certification had not been denied on the merits and that the offer was ineffective to moot the case because it covered only the individual plaintiff "and did not provide any requested relief for the class." *Id.*

Subsequent to *Alpern,* the court in *Critchfield Physical Therapy, P.C. v. Techhealth, Inc.*, 2012 WL 3705176, at *2 (E.D. Mo. Aug. 27, 2012), a TCPA fax case, also applied the rule in *Alpern.* There, the plaintiff filed a "placeholder" motion for class certification, which the court denied as unnecessary, and the defendant made an offer of judgment before another class-certification motion was filed. *Id.* Even though there was no motion for class certification pending at the time of the offer, the court denied the defendant's motion to strike class allegations under *Alpern* because "the initial motion for class certification was not denied on the merits." *Id.* (citing *Alpern*, 84 F.3d at 1539).

Thus, ZocDoc's Rule 68 offer, made on March 27, 2014 while the case was pending in the Eastern District of Missouri, was not only rejected (and would have expired within 14 days after it was made), the law in the Eighth Circuit would have required denial of a motion to dismiss based on mootness. It is unclear how ZocDoc can now resurrect in this Court a rejected and expired Rule 68 offer of judgment that was not tenable in the jurisdiction in which it was made. When this case was

10

transferred to this Court, Plaintiff in an abundance of caution (and in light of the absence of Second Circuit authority regarding whether a Rule 68 offer of judgment could moot a plaintiff's claim in a putative class action if served before a motion for class certification) filed its Notice of First Amended Motion for Class Certification. Plaintiff thereafter submitted a letter on September 24, 2014 requesting a pre-motion conference to request that the Court treat the already filed Notice of First Amended Motion for Class Certification and Memorandum in Support as being filed *nunc pro tunc* as of August 28, 2014 or, in the alternative, that the Court grant Plaintiff permission to file said Notice and Memorandum. (*See* Doc. 52).  As with the FAC, Defendant has treated the Notice and Memorandum in Support of First Amended Motion for Class Certification as "operative" and the matter is fully briefed.  In the event the Court does not allow Plaintiff to file its Notice and Memorandum in Support of First Amended Motion for Class Certification *nunc pro tunc*, Plaintiff requests that its letter requesting a pre-motion conference operate as a motion for class certification, as in *Tocco*.  *See Tocco*, 2014 WL 3964948, at *5.

### B.   Defendant's argument a putative class action plaintiff can be picked off any time before a ruling on class certification fails.

ZocDoc argues that the actual certification decision by the district court (rather than a motion for class certification) is the "threshold for a class to acquire independent legal standing" and that although some federal courts have held a plaintiff can avoid mooting by simply moving for class certification, these decisions are "not supported by the relevant Supreme Court case law or common sense." (Def.'s Mem. at 7, 8).  ZocDoc argues that a plaintiff "should not be allowed to artificially create legal standing for a class of individuals that may never be certified simply by filing a cursory motion for class certification that may be entirely without merit."  (*Id.* at 8).  In support of this argument, ZocDoc cites to *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), *Sosna v. Iowa*, 419 U.S. 393 (1975), and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980).  ZocDoc's attempt to support

its argument that a putative plaintiff can be picked off via a Rule 68 offer of judgment at any time prior to a ruling on class certification with the aforementioned authority fails.

In *Sosna*, the Supreme Court held that a class action is not rendered moot when the named plaintiff's individual claim becomes moot after the class has been certified.  *Genesis*, 133 S. Ct. at 1530 (discussing *Sosna*).  The Court reasoned that when a district court certifies a class, "'the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff],' with the result that a live controversy may continue to exist, even after the claim of the named plaintiff becomes moot."  *Id.* at 1350 (citing *Sosna*, 419 U.S. at 399-402). And in *Geraghty*, the Court "narrowly extended this principle to denial of class certification motions," holding that where the class would have acquired the independent legal status described in *Sosna* but for the district court's erroneous denial of class certification, a corrected ruling on appeal relates back to the denial of the class certification motion.  *Id.* (citing *Geraghty*, 445 U.S. at 404, and n. 11).

ZocDoc attempts to use *Sosna* and *Geraghty* to fashion a rule of law holding that until there is a decision on a Rule 23 motion for class certification, a plaintiff can be picked off.  The attempt fails, and ZocDoc's reliance on *Genesis* to further this point is misplaced.  The Supreme Court went out of its way in *Genesis* to limit its ruling to "collective actions" under the Fair Labor Standards Act, and expressly stated the ruling did not apply to Rule 23 class actions.  *Genesis*, 133 S. Ct. at 1529.[3]  The plaintiff in *Genesis* filed an FLSA collective action, but failed to move for "conditional certification," which would have allowed it to send notice to other affected employees, telling them how to "opt in" to the action.  *Id.* The defendant made an offer of judgment, and the plaintiff conceded the offer mooted her individual claim.  *Id.* The Supreme Court held that, since no other claimant had opted in,

---

[3] *See Gomez v. Campbell-Ewald Co.*, ___ F.3d ___, 2014 WL 4654478, at *3 and n. 3 (Sept. 19, 2014)(stating courts have universally concluded that the *Genesis* discussion does not apply to Rule 23 class actions and "at least ten courts have expressly stated that the Genesis analysis does not bind courts with respect to class action claims").

when the plaintiff's individual claim became moot, her entire claim was mooted because she lacked

any personal interest in representing others. *Id.* The Court <u>refused</u> to consider Rule 23 precedents in

making its decision, holding that collective actions under the FLSA are "fundamentally different"

from Rule 23 class actions, where class members do not have to "opt in" to be bound by a judgment.

*Id.*

The Supreme Court's decision in *Genesis* recognized "the Courts of Appeal disagree whether

an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do

not reach this question or resolve the split, because the issue is not properly before us." *Genesis*, 133

S. Ct. at 1528–29. *Genesis* merely "assume[d], without deciding," that the individual claim in that case

was moot. *Id.* at 1529.  Justice Kagan, joined by Justices Ginsberg, Breyer, and Sotomayor, dissented

from the majority's decision not to reach the issue of whether a Rule 68 offer mooted the individual

claim (and from the disposition of the case that resulted from the unexamined premise that the

individual claim was moot). *Id.* at 1532–37 (Kagan, J., dissenting). Addressing the issue the majority

sidestepped, Justice Kagan demonstrated how the argument that an unaccepted Rule 68 offer moots

a plaintiff's claim is, in her words, "bogus." *Id.* at 1532. As she explained, even a Rule 68 offer that

would "provide complete relief" to an individual plaintiff does not deprive the plaintiff of a concrete

interest in the outcome or the court of the ability to grant effectual relief:

> We made clear earlier this Term that "[a]s long as the parties have a concrete interest,
> however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*,
> 568 U.S. __, 133 S. Ct. 1017, 1023, 185 L.Ed. 1 (2012) (internal quotation marks
> omitted). "[A] case becomes moot only when it is impossible for a court to grant any
> effectual relief whatever to the prevailing party." *Ibid.* (internal quotation marks
> omitted). By those measures, an unaccepted offer of judgment cannot moot a case.
> When a plaintiff rejects such an offer—however good the terms—her interest in the
> lawsuit remains just what it was before. And so too does the court's ability to grant her
> relief. An unaccepted settlement offer—like any unaccepted contract offer— is a legal
> nullity, with no operative effect. As every first-year law student learns, the recipient's
> rejection of an offer "leaves the matter as if no offer had ever been made." *Minneapolis*
> *& St. Louis R. Co. v. Columbus Rolling Mill,* 119 U.S. 149,151, 7 S. Ct. 168 (1886).
> Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that
> "[a]n unaccepted offer is considered withdrawn." Fed. Rule Civ. Proc. 68(b) . So

assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted.

*Id.* at 1533–34; *accord Diaz v. First Home Buyers Protection Corp.*, 732 F.3d 948, 953-55 (9th Cir. 2013)

(adopting Justice Kagan's position); *Bais Yaakov of Spring Valley v. ACT, Inc.*, --- F. Supp. 2d ---, 2013

WL 6596720 (D. Mass. Dec. 16, 2013) (same).

In short, as set forth with unmistakable clarity by Justice Kagan, a Rule 68 offer of judgment does not moot a plaintiff's claim in a putative class action.  While that issue was not addressed by the majority in *Genesis*, Justice Kagan's rationale is highly persuasive.  It was adopted by the Ninth Circuit in Diaz, 732 F.3d at 953-55 ("we are persuaded that Justice Kagan has articulated the correct approach" and "[w]e therefore hold that an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot.")[4]  In addition, the Seventh Circuit stated in *Scott v. Westlake Serv. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) that following *Genesis* (and in particular Justice Kagan's dissent), there are reasons to question our approach" to the issue of whether an offer of judgment moots a claim. ZocDoc's argument finds no support in the cases it cited and is expressly contrary to Justice Kagan's dissent in *Genesis*.  It should be rejected.

## III. The opt-out regulation does not allow "substantial compliance," and Defendant's faxes do not substantially comply in any case.

ZocDoc argues the case should be dismissed to the extent it alleges Defendant violated 47

C.F.R. § 64.1200(a)(4)(iv), an FCC regulation issued pursuant to the TCPA requiring certain opt-out

---

[4] Plaintiff does not agree that Defendants offer of judgment provided full satisfaction of Plaintiff's claim. Plaintiff sought to proceed as a class and could possibly been awarded an incentive should the case be successful.  Furthermore, Defendant committed numerous violations of the TCPA regarding the faxes it sent without permission and without proper opt-out.  *See Charvat v. Ryan*, 168 Ohio App. 3d 78, 84–89 (2006) (awarding $2,000 for a single telephone call that violated the statue and three FCC regulations), *aff'd in part & rev'd in part on other grounds*, 116 Ohio. St. 394 (2007); see also *Kaye v. Amicus Mediation & Arbitration Croup, Inc.*, No. 13-CV-347, 2014 WL 2207431, at *5 (D. Conn. May 28, 2014), holding the defendants calculated the amount of their offer assuming one statutory damage award per fax (which *they* believed was full relief), but the plaintiffs alleged they could recover for each of the multiple violations in each fax. The court did not resolve that legal issue at the pleading stage, instead holding that "[t]his dispute regarding the damages recoverable on plaintiffs' individual claim suffices to satisfy Article III's case-or-controversy requirement, independent of any interest plaintiffs may have, at this stage, in representing the class."

notice on all fax advertisements, even where the sender claims to have "prior express invitation or permission." (Def.'s Mem. at 11). ZocDoc necessarily concedes its faxes do not comply with the regulation but argues that "substantial compliance" is sufficient and that its faxes substantially comply. (*Id.*). ZocDoc is wrong on both counts.

First, the regulation does not allow substantial compliance. The regulation states, "[a] facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section." 47 C.F.R. § 64.1200(a)(4)(iv). In turn, paragraph (a)(4)(iii) states an opt-out notice complies "only if" it contains all the required elements. The regulation is unambiguous, and it does not allow for "substantial compliance."

The FCC rejected a "substantial compliance" standard in *In re Response Card Mktg., Inc.*, 27 F.C.C.R. 3895, 3897 ¶¶ 6, 7 (Apr. 10, 2012), where it confirmed that opt-out notice must "satisfy *all* of the statutory and regulatory requirements." The opt-out notice on the fax in *Response Card* stated, "Fax removals are easy! 24 hour automated service, call 1-888-662-2677 and enter your reference ID . . . and you will be removed immediately." *Id.* ¶ 8. The FCC found the opt-out notice inadequate, holding that because the opt-out notice "did not meet *all*" of the requirements, the sender could not rely on the exception for faxes sent with "prior express invitation or permission" to shield it from TCPA liability. *Id.* ¶¶ 11–12.

ZocDoc's authorities are easily distinguishable. (Def.'s Mem. at 11). The court in *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019, at *7 (W.D. Wis. Mar. 9, 2009), did not apply a "substantial compliance" standard. It held the opt-out notice in question "satisfie[d] the regulation" fully. *Id.* at *4. The opt-out notice in *Landsman* stated, "failure to comply within a reasonable time with a request to opt-out would be unlawful." *Id.* at *2. The court held the phrase "within a reasonable time" complied with the regulation because, although the regulation states

15

"within 30 days," the statute states "within the shortest reasonable time." *Id.* at *6. The FCC put an outside limit of 30 days on what constitutes a "reasonable time," the court held, but the FCC also ruled that senders "with the capability to honor do-not-fax requests in less than 30 days *must* do so." *Id.* at *5. So "within a reasonable time," the court held, "may actually be *more* in accordance" with the regulation than a notice stating "within 30 days." *Id.* at *6.

Here, the insufficiency of the opt-out notice is not a question of "semantics." *Id.* at *7. ZocDoc's faxes state *nothing* about the time for ZocDoc to honor opt-out requests and, more important, fail to state (1) that the consumer has a legal *right* to opt out and (2) that Defendant has a legal obligation to honor that request. The notice is fatally non-compliant, and *Landsman* does not apply. *See Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F. Supp. 2d 272, 287–88 (S.D. N.Y., 2013) (distinguishing *Landsman* on this basis); *In re Response Card Mktg.,* 27 F.C.C.R. at 3898.

In *Magana Cathcart McCarthy v. CB Richard Ellis, Inc.,* 174 Cal. App. 4th 106, 126 (Cal. App. 2d Dist. 2009) (Mosk, J., dissenting), the trial court held the opt-out notice regulation did not become effective until after the defendant sent its faxes, meaning it could not be held liable, and stated, in dicta, that "substantial compliance" was available as a defense. The trial court did not hold the defendant's faxes substantially complied. *Id.* The appellate court reversed on procedural grounds, and in the course of doing so, noted the trial court's dicta about substantial compliance. *Id.* The case does not support ZocDoc's position.

Second, ZocDoc's faxes do not "substantially comply" with the regulation under any reasonable meaning of those words. The regulation requires fax advertisers to (1) inform consumers that they have a legal right to opt out of future fax advertisements, (2) inform the consumer *how* to opt out, and (3) inform the consumer that a sender's failure to honor an opt-out request is unlawful. ZocDoc argues it met the second requirement by providing a phone number, but it clearly does not meet the first and third.  But ZocDoc has not met that requirement either because he has not provided

a fax number as an alternative method to opt out. The faxes mention nothing about the consumer's rights or the sender's obligations. (Doc. 1-1). ZocDoc's characterization of the opt-out requirements as form over substance relative to its attempted opt-outs misses the mark. (Def.'s Mem. at 10). Without the knowledge that an opt-out request is legally enforceable, a consumer is unlikely to even attempt to opt out, and might justifiably suspect that calling will result in receiving *more* fax advertisements, since the sender now knows there is someone paying attention on the other end of the line.

In sum, ZocDoc's substantial compliance argument fails both legally (since it is contrary to the plain language of the regulation and the FCC ruling in *In re Response Card*) and factually (since ZocDoc's faxes do not substantially comply in any event).

## IV.   The Court should deny ZocDoc's request to stay the case indefinitely pending the resolution of the non-party FCC petitions.

### A.   Defendant fails to meet its burden for a stay under the Court's inherent powers.

To obtain a stay under the Court's inherent powers, a party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Without an affirmative showing of "undue prejudice," there is "no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Chevron Corp. v. Donziger*, 970 F. Supp. 2d 214, 220 (S.D.N.Y. 2013) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir. 2012) (noting "only one case in which a district court's decision to deny a stay was reversed on appeal, and that case was decided more than thirty years ago").

Courts in this circuit consider five factors for a stay under the Court's inherent powers: "(1) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (2) the private interests of and burden on the defendant;

(3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Medien Patent Verwaltung AG v. Warner Bros. Entm't Inc.*, No. 10 CIV. 4119 CM GWG, 2014 WL 1169575, at *2 (S.D.N.Y. Mar. 21, 2014).

### 1.    Defendant's motion to stay pursuant to the Court's inherent powers should be denied for failure to analyze the relevant standards.

ZocDoc does not discuss the standards for a stay pursuant to the Court's inherent authority. (Def.'s Mem. at 15–19). ZocDoc does not argue it will suffer undue prejudice in the absence of a stay or that Plaintiff will not be prejudiced by a stay. (*Id.*) Nor does it address the interests of the courts, non-parties, or the public. (*Id.*)

ZocDoc's only argument is that the outcome of the FCC petitions could "substantially impact" this case. (*Id.* at 18). That is not one of the relevant factors, *see Medien Patent*, 2014 WL 1169575, at *2, and "judicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction," *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (reversing stay based solely on "judicial efficiency"). ZocDoc has failed to meet its burden, and its motion to stay pursuant to the Court's inherent powers should be denied on this basis alone.

### 2.    The stay will take several years, during which time witness memories will fade and relevant evidence will be lost or destroyed.

Even if the Court examines the relevant factors on its own, they favor denying the stay. A stay should not be of "indefinite duration in the absence of a pressing need." *Landis*, 299 U.S. at 255; *see also Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (reversing stay that would have put case "in limbo for years"). Requests for declaratory rulings before the FCC are of "indefinite duration" and can take years to resolve. In *In re Core Commc'ns, Inc.*, 531 F.3d 849, 859 (D.C. Cir. 2008), for example, the D.C. Circuit chastised the FCC for taking six years to clarify its authority for a regulation, holding, "[i]f the FCC believes it has authority, it should not take six years to put its rationale in writing." *See also Telecommc'ns Research & Action Ctr. v. FCC*, 750 F.2d 70,

80–81 (D.C. Cir. 1984) (involving five- and two-year delays by FCC). In *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013), the court denied a stay, in part, because the FCC would likely take over two years given its track record. In *N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*, 2011 WL 181736, at *2 (S.D. Cal. Jan. 19, 2011), the court refused to stay pending the resolution of two FCC petitions, even though they would "shed light upon legal questions in this case," because neither proceeding had "a certain resolution date" and each "began well before this suit was instituted." *Id.* The FCC's "uncertain timetable" sank the request. *Id.* at *3.

In this case, the first FCC petition challenging the opt-out-notice regulation was filed November 30, 2010, by Anda, Inc. (Ex. A, FCC Order on Anda Petition, May 2, 2012 ("Anda Order")). The FCC's Consumer & Governmental Affairs Bureau denied the petition 17 months later. (*Id.*) Anda petitioned for discretionary review by the full FCC on May 14, 2012. (Ex. B, Anda Petition for Review)**.** To date, there has been no ruling on the petition. The full FCC may "grant the application for review in whole or in part, or it may deny the application with or without specifying reasons therefor." 47 C.F.R. § 1.115(g). There is no time limit for that decision. *Id.* Once the FCC decides the Anda petition, any aggrieved party may seek reconsideration. *Id.* There is no time limit for that decision. *Id.*

In July 2013, a new round of TCPA defendants began filing petitions with the Bureau raising the same arguments rejected in the Anda Order, as well as new arguments: (1) that the FCC should retroactively create a "substantial compliance" defense to be applied in pending lawsuits and (2) that the FCC should issue retroactive, judicially binding "waivers." There is no time limit for the Bureau to rule on these petitions. Once it does, any aggrieved party may petition the full FCC for review, as Anda did in 2012. Once the FCC decides the petitions, an aggrieved party may appeal to the court of appeals under the Administrative Procedure Act (the "Hobbs Act"), 28 U.S.C. § 2342.

The circuit courts average 13.2 months to decide appeals from agency rulings. (Ex. C, Administrative Office of U.S. Courts, Median Time Intervals in Months for Merit Termination of Administrative Agency Appeals by Circuit (Sept. 30, 2013))**.** The Fourth Circuit is the quickest (7.1 months); the Ninth Circuit is the slowest (22.3 months). (*Id.*) The Second Circuit averages 15.8 months. (*Id.*) After the court of appeals rules, an aggrieved party may seek certiorari before the Supreme Court.

Given these facts, on September 8, 2014, the United States District Court for the Western District of Michigan denied a request to stay pending the opt-out-notice petitions, reasoning in part as follows:

> [T]he stay requested effectively amounts to an open-ended, indefinite stay. The FCC has had the issue on its docket, at one level or another, since 2010. There is no schedule for the FCC to reach a final decision. And even if the FCC decides the petitions tomorrow, appeals are sure to follow, adding still more time and uncertainty to the duration of a stay period. Furthermore, a ruling in favor of the defendants is only one of the possible outcomes of the FCC process. The only thing we know for sure about a stay is that it will further delay adjudication of this case for an indefinite period.

*Physicians Healthsource Inc. v. Stryker Sales*, No. 12-cv-729, 2014 WL 4454953 (W.D. Mich. Sept. 8, 2014). The *Stryker* case is more advanced than this case, but the Court should still follow its reasoning and deny ZocDoc's proposed stay given its "indefinite" and "uncertain" duration.

During the multi-year stay ZocDoc is seeking, witness memories will fade and evidence will be lost during the stay if Plaintiff is not permitted to conduct discovery. Even if ZocDoc honors its obligation to preserve evidence, TCPA cases typically involve third parties who do not keep records indefinitely and are unaware of any preservation obligations when they have not been identified. For example, ZocDoc likely bought a list of fax numbers and hired a fax broadcaster to transmit the faxes. Plaintiff will seek to identify and subpoena these parties, but without initial discovery from ZocDoc, Plaintiff will not even know who to subpoena.

### 3.   A stay would most likely be futile.

A stay would most likely be futile because the petitions are highly unlikely to succeed and even if the opt-out-notice regulation is invalidated, ZocDoc has produced no evidence it obtained "prior invitation or permission" from anyone, so it will be liable for sending unsolicited fax advertisements.

First, the FCC made clear in the 2006 Junk Fax Order that the opt-out-notice regulation fleshes out the undefined statutory term "prior express invitation or permission" by specifying how such permission may be obtained, maintained, and revoked.  (Ex. D, 2006 Junk Fax Order ¶¶ 45–48). The FCC could have allowed consumers to opt out however they chose, but instead it gave fax advertisers flexibility to designate the "avenues" for opt-out requests. (*Id.* ¶ 34 & n.127, n.128). In exchange, the FCC required senders to inform consumers (1) that they have a legal right to opt out, (2) that the sender must comply within 30 days, and (3) to disclose the "avenues" designated by the sender for opt-out requests. (*Id.* ¶ 34). Thus, the rule "implements" the ban on fax advertisements sent without "prior express invitation or permission" by fleshing out what that term *means*. (*Id.*)

The FCC Bureau of Consumer & Governmental Affairs ruled in the Anda Order that the regulation implements the prohibition on fax advertisements sent without prior express permission by stating "how such prior express permission can be obtained from, *and revoked by*, a consumer." (Ex. A, ¶ 7). The FCC delegated that authority to the Bureau in 47 C.F.R. § 0.141, as authorized by 47 U.S.C. § 155(c). Thus, the Anda Order is "entitled to the same degree of deference as if it were made by the agency itself." *Indiana Bell Tel. Co., Inc. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004). It is the FCC's authoritative statement on the statutory basis for the regulation "unless and until" the full FCC decides to (1) accept review and (2) "modify" the order. *Id.* The full FCC may still dismiss Anda's petition "without specifying reasons therefor." 47 C.F.R. § 1.115(g).

If there were any doubt about the FCC's position after the 2006 Junk Fax Order and the Anda Order, it was put to rest in the *Nack* amicus briefs. Those briefs explain in detail that the regulation

was "promulgated under the grant of authority that Congress gave the FCC" in § 227(b)(2), thus creating a private right of action to "allow consumers to stop unwanted faxes in the future." (Ex. E at 6, 20). The FCC stated the defendants were "subject to liability in a private civil action" only because "they chose to violate a binding FCC rule in effect at the time without first challenging its lawfulness" under the Hobbs Act. (Ex. F at 13). The FCC's rationale is solid, and it is so unlikely to reverse course now that a stay would most likely be futile.

ZocDoc argues "there is reason to believe that the FCC may reconsider" its position, but it does not state what that reason is. (Def.'s Mem. at 16). It argues "[c]ourts that have followed the FCC's reasoning have done so begrudgingly," but it cites only one decision, the Eighth Circuit's decision in *Nack*. (*Id.* at 17). To the contrary, the courts have wholeheartedly enforced the opt-out-notice regulation. In *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. Aug. 26, 2013), the Seventh Circuit affirmed class certification and summary judgment, holding the lack of compliant opt-out notice meant "it does not matter which recipients consented or had an established business relation with Turza."

In *In re Sandusky Wellness Ctr., LLC*, --- Fed. Appx. ---, 2014 WL 2809283 (6th Cir. June 12, 2014), the plaintiff sought to certify an "opt-out-notice" class, and the district court ignored the issue. *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, 2014 WL 1224418, at *5 (N.D. Ohio Mar. 24, 2014). The plaintiff petitioned for review, and the defendant argued the district court was correct not to consider the opt-out notice because "the TCPA's plain language does not require solicited faxes to provide opt-outs." (Ex. G, Def.'s Opp. to Pl.'s Pet. at 8 (Apr. 17, 2014)). The defendant urged the Sixth Circuit to hold that "the scope of the TCPA-JFPA" is limited to "unsolicited faxes" and that the regulation "exceeds the scope of the FCC's power." (*Id.* at 9, 13). The defendant discussed the pending petitions, arguing the timing of the appeal was "improvident" and that declining the appeal would "afford the FCC its opportunity to offer clarity." (*Id.* at 8, 15).

The Sixth Circuit rejected these arguments and held the district court "failed to consider whether the facsimiles transmitted by the defendants contained opt-out notices or whether those opt-out notices were adequate." *In re Sandusky Wellness*, 2014 WL 2809283, at *1 (citing *Turza*, 728 F.3d at 684). The Sixth Circuit held that "[i]f the notices were absent or inadequate, commonality might be present," ordered the district court to "address the impact of an absent or inadequate opt-out notice," and vacated the order denying certification. *Id.* Contrary to ZocDoc's citation to one Ohio appellate court ruling,[5] the courts are enforcing the opt-out-notice regulation, and they are not doing it "begrudgingly."

Finally, even in the unlikely event the opt-out-notice regulation is retroactively extinguished, it will not dispose of this case. Plaintiff's primary allegation is that ZocDoc sent "unsolicited advertisements" by fax. (Doc. 39 ¶ 1). Plaintiff alleges ZocDoc sent two "unsolicited facsimiles" to Plaintiff on or about July 24, 2012, and October 2, 2012 (*id.* ¶ 11), that "Plaintiff and the other class members had not given express permission or invitation for Defendants or anyone else to fax advertisements about Defendants' goods or services" (*id.* ¶ 42), and that the faxes therefore violated the TCPA, giving rise to $500 minimum statutory damages per violation (*id.* ¶ 36).

The challenges to the opt-out-notice regulation comes into play only if ZocDoc can carry its "burden of proof" to "demonstrate that permission was given." (Ex. D, 2006 Junk Fax Order ¶ 46). The FCC put that burden squarely on the sender, and ruled that senders should "promptly document that they received such permission." (*Id.*) ZocDoc cites no evidence in its motion that it obtained permission from anyone, so ZocDoc will not escape TCPA liability for sending unsolicited fax advertisements even if the non-party petitions are successful.

---

[5] The one case ZocDoc cites relied solely on the district court's ruling in *Nack*, which was overruled by the Eighth Circuit. *See Miller v. Painters Supply & Equip. Co.*, 2011-Ohio-3976 (Ohio Ct. App.) ¶¶ 19–20.

The District of Connecticut recently denied a motion to stay pending the opt-out petitions for this reason in *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, No. 13-347, Order, ECF No. 87 (D. Conn. May 27, 2014). (Ex. H). There, the court refused to stay, in part, because the complaint alleged claims based on "allegedly unsolicited faxes, independent of the opt-out notice." (*Id.*) The same is true here. Plaintiff alleges ZocDoc sent unsolicited fax advertisements independently of the opt-out notice violations and, since there appears to be no evidence ZocDoc obtained permission, there is no reason to put this case on hold pending a challenge to a permission-related part of the regulation.

**B.      The primary-jurisdiction doctrine does not warrant a stay.**

Although ZocDoc correctly notes some courts have relied on the primary-jurisdiction doctrine to stay pending the opt-out-notice petitions, most courts (and TCPA defendants) have avoided that doctrine. In two cases, TCPA defendants expressly disavowed primary jurisdiction as the basis for their motions.[6]

These defendants avoided the primary-jurisdiction doctrine because it is a doctrine of "abstention," where an issue that is "originally cognizable" in the courts is also within the special competence of an agency. *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). The courts will often "abstain" from deciding such an issue until the agency rules to prevent "inconsistent rulings." *Id.* The court and the agency must have concurrent jurisdiction. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 136 (2d Cir. 2010); *Penny v. Sw. Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990); 73 C.J.S. Public Admin. Law & Proc. § 73 ("[A] court and an administrative agency must have concurrent jurisdiction for the primary jurisdiction doctrine to apply."); *Assoc. Tel. Answering Exch., Inc. v. Am. Tel.*

---

[6] *See* Ex. I, *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-05490 (N.D. Ill. Sept. 6, 2013), ECF No. 88 (noting defendants expressly disclaimed "primary jurisdictional grounds"); Ex. J, *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 14-00001 (C.D. Cal. May 5, 2014), ECF No. 37 (arguing "[i]ssues of 'primary jurisdiction' are entirely irrelevant to the question currently before the Court").

*& Tel. Co.*, 492 F. Supp. 921, 924 (E.D. Pa. 1980) (doctrine allows court to "refrain" from deciding issue until it "has been considered and decided by the agency with concurrent jurisdiction").

In *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993), the respondent argued an agency had *exclusive* jurisdiction and so "the doctrine of primary jurisdiction" required the petitioners to "initially" present their claims to the agency rather than the court. The Supreme Court held this argument "reflects a mistaken understanding of primary jurisdiction," because the doctrine applies only to issues "properly cognizable in court," and the "[r]eferral of the issue to the administrative agency does not deprive the court of jurisdiction." *Id.*

This Court does not have concurrent jurisdiction over the issues in the FCC petitions ZocDoc points to. As ZocDoc notes, the petitions ask the FCC "to modify its opt-out regulations" in various ways based on arguments that the regulations exceed the FCC's statutory authority. (Def.'s Mem. at 15–16). These are precisely the arguments the defendant tried to raise in *Nack v. Walburg*, 715 F.3d 680, 683 (8th Cir. 2013), where the FCC filed two amicus briefs[7] arguing the defendant was challenging the validity of the regulation and that the judicial power to decide these issues was vested by Congress—in the Hobbs Act, 28 U.S.C. § 2342—exclusively in the federal courts of appeals on review of a final FCC order. The Eighth Circuit agreed with the FCC, holding it "makes no difference" if the question of validity arises in a suit between private parties rather than an FCC proceeding because "the Hobbs Act's jurisdictional limitations are 'equally applicable whether [a litigant] wants to challenge the rule directly . . . or indirectly.'" (*Id.* at 687 (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010)). The Supreme Court denied certiorari. *Walburg v. Nack*, 134 S. Ct. 1539 (Mar. 24, 2014).

---

[7] The FCC's opening amicus brief is available at 2012 WL 725733 (Feb. 24, 2012). Its supplemental amicus brief is available at 2012 WL 3781344 (Aug. 21, 2012).

Since this Court has no jurisdiction to decide the issues raised in the FCC petitions, it would make no sense for the Court to "refer" these issues to the FCC or to "abstain" from deciding them. *Reiter*, 507 U.S. at 268–69; *Baykeeper*, 660 F.3d at 691. A court cannot "abstain" from deciding an issue it has no jurisdiction to decide. Thus, the Court cannot "abstain" pursuant to the primary-jurisdiction doctrine, and it cannot serve as the basis for a stay of this case.

The TCPA defendant in *Physicians Healthsource v. Masimo* explained this point when it disavowed the primary-jurisdiction doctrine. The defendant explained that "[i]ssues of 'primary jurisdiction' are entirely irrelevant" because the "only avenue for challenging the validity of 47 C.F.R. § 64.1200(a)(4)(iv) is to petition the FCC and then appeal any final ruling to a federal appellate court, as provided by the Hobbs Act . . . and 47 U.S.C. § 402." (Ex. J, Def.'s Reply Supp. Mot Stay, No. 14-00001) (C.D. Cal. May 5, 2014) ECF No. 37 at 12). Since the district court lacked "jurisdiction to resolve the key point in dispute"—the FCC's statutory authority for the regulation—there was no issue of primary jurisdiction. (*Id.*)

## CONCLUSION

Wherefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's motion to dismiss in its entirety, deny Defendant's motion to stay, grant Plaintiff's request to file its Corrected First Amended Complaint *nunc pro tunc* as of September 3, 2014 or, in the alternative grant Plaintiff's request for a pre-motion hearing regarding leave to file a First Amended Complaint, and grant Plaintiff leave to file *nunc pro tunc* its Notice of First Amended Motion for Class Certification and Memorandum in Support or in the alternative grant Plaintiff's request for a pre-filing conference regarding same.

Respectfully submitted,

/s/ Aytan Y. Bellin
Aytan Y. Bellin
BELLIN & ASSOCIATES LLC
85 Miles Avenue
White Plaines, NY 10606
Phone: 914-358-5345
Fax: 212-571-0284
E-mail: Aytan.Bellin@bellinlaw.com


Max G. Margulis, #24325, Pro hac vice to be submitted
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: MaxMargulis@MargulisLaw.com


Brian J. Wanca, Pro hac vice submitted
Ross M. Good, Pro hac vice submitted
Ryan M. Kelly, Pro hac vice submitted
Anderson + Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
E-mail: bwanca@andersonwanca.com, rgood@andersonwanca.com
rkelly@andersonwanca.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2014, I submitted the foregoing via this Court's CM/ES system, which served notice of the filing on the Attorneys for Defendant, Charles J. Nerko, Vedder Price P.C., 1633 Broadway, 47th Floor, New York, New York 10019, P: 212-407-7700, T: 212-407-7799, Email: cnerko@vedderprice.com and Blaine C. Kimrey and Bryan K. Clark,, Vedder Price, P.C., 222 North LaSalle Street, Chicago IL 60601, P: (312) 609-7500, F: (312) 609-5005, Email: bkimrey@vedderprice.com, bclark@vedderprice.com and a courtesy copy was also served by email.

/s/ Aytan Y. Bellin