**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RADHA GEISMANN, M.D., P.C., | ) | |
| individually and on behalf of all others | ) | |
| similarly-situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:14-cv-07009 (LLS) (KNF) |
| v. | ) | |
| | ) | Hon. Louis L. Stanton |
| ZOCDOC, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL</u>**

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................................... ii

Background ............................................................................................................................... 1

Argument .................................................................................................................................. 4

      A.    Standards for motion to compel .............................................................. 4

      B.    Plaintiff has standing to challenge ZocDoc's practice of sending
           fax advertisements in violation of the TCPA and is entitled to
           discovery of same .................................................................................. 5

      C.    Plaintiff's request for all fax advertisements transmitted by or on
           behalf of ZocDoc advertising ZocDoc's goods or services during
           the four-year class period is consistent with the allegations in the
           Complaint and the class Plaintiff seeks to certify ................................ 12

      D.    Plaintiff is entitled to transmission logs ............................................... 16

      CONCLUSION ...................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*,
   757 F.3d 540 (6th Cir 2014) ................................................................................ 16

*Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers*,
   36 F. Supp. 3d 417 (S.D.N.Y. 2014) ...................................................................... 6

*Brodsky v. Humana, Inc.*,
   2009 WL 1956450 (N.D. Ill. July 8, 2009) ........................................................... 18

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ................................................................................. 9

*CE Design, Ltd. v. Cy's Crab House N., Inc.*,
   731 F.3d 725 (7th Cir. 2013) ................................................................................. 20

*Chapman v. Wagener Equities, Inc.*,
   2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ........................................................... 20

*Christine Asia Co. Ltd. v. Alibaba Group Holding Ltd.*,
   327 F.R.D. 52 (S.D.N.Y. 2018) ............................................................................. 4

*Compagnie Francaise d Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
   105 F.R.D. 16 (S.D.N.Y. 1984) ............................................................................. 4

*Creative Montessori Learning Center v. Ashford Gear, LLC*,
   2012 WL 3961307 (N.D. Ill. Sept. 10, 2012) ("*Creative II*") ................................. 19

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
   662 F.3d 913 (7th Cir. 2011) ................................................................................. 18

*Critchfield Physical Therapy, P.C. v. Techhealth, Inc.*,
   2013 WL 791860 (E.D. Mo. Mar. 4, 2013) ........................................................... 18

*Etter v. Allstate Insurance Co.*,
   323 F.R.D. 308 (N.D. Cal. 2017) ........................................................................... 12

*Fauley v. Drug Depot, Inc.*,
   323 F.R.D. 594 (N.D. Ill. 2018) ............................................................................. 15

*Fort Worth Employees' Ret. Fund v. JP Morgan Chase & Co.*,
   297 F.R.D. 99 (S.D.N.Y. 2013) ............................................................................. 4

*Haghayeghi v. Guess?, Inc.*,
   168 F.Supp.3d 1277 (S.D. Cal. March 10, 2016) .................................................. 17

*Hawk Valley, Inc. v. Taylor*,
   301 F.R.D. 169 (E.D. Pa. 2014) ............................................................................. 20

*Henderson v. United Student Aid Funds, Inc.*,
   2015 WL 4742346 (S.D. Cal. July 28, 2015) ........................................................ 18

*Hinman v. M & M Rental Ctr.*,
   545 F. Supp.2d 802 (N.D. Ill 2008) ....................................................................... 15

*Holtzman v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ................................................................................. 5

*Houhgton Mifflin*,
   36 F.Supp.3d at 421 ........................................................................................... 6, 18

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ................................................................................. 10

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ........................................................................... 10–11

## TABLE OF AUTHORITIES

**Cases**

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  897 F.3d 88 (2nd Cir. 2018).................................................................................................. 8

*Medina v. Enhanced Recovery Company, LLC*,
  2017 WL 5196093 (S.D. Fla. Nov. 9, 2017)........................................................................ 5

*Mednick v. Precor Inc.*,
  2014 WL 6474915 (N.D. Ill. Nov. 13, 2014) ..................................................................... 10

*Mednick v. Precor, Inc.*,
  320 F.R.D. 140 (N.D. Ill. 2017)......................................................................................... 10

*Melendez v. Greiner*,
  2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003) .................................................................... 4

*Melito v. Experian Mktg., Inc.*
  923 F.3d 85 (2d Cir. 2019)................................................................................................... 5

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012).................................................................................................. 6

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978).............................................................................................................. 4

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
  781 F.3d 1245 (11th Cir. 2015) ........................................................................................... 5

*Physicians Healthsource Inc. v. Masimo Corp.*,
  2019 WL 1966663 (C.D. Cal. Feb. 27, 2019)...................................................................... 8

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
  2013 WL 11326540 (W.D. Mich. Dec. 11, 2013) ............................................................. 15

*Practice Management Support Services, Inc. v. Cirque Du Soleil, Inc.*,
  301 F. Supp. 3d 840 (N.D. Ill. 2018),
  *decertified on other grounds*, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018)............................. 10

*Prado–Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ......................................................................................... 11

*Progressive Health & Rehab Corp. v. Quinn Medical, Inc.*,
  2018 WL 2904547 (S.D. Ohio June 11, 2018) .................................................................. 16

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
  704 F.3d 489 (7th Cir. 2013). ............................................................................................. 20

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ............................................................................................. 16

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*,
  2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) ................................................................... 15

*St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*,
  2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ................................................................... 11

*St. Louis Heart, Inc. v. Nomax, Inc.*,
  2015 WL 9451046 (E.D. Mo. Dec. 23, 2015) ..................................................................... 9

*State of Missouri ex rel. Coffman Group, L.L.C. v. Sweeney*,
  219 S.W.3d 763 (Mo. App. Ct. 2005).......................................................................... 14–15

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*True Health Chiropractic Inc. v. McKesson Corp.*,
    332 F.R.D. 589 (N.D. Cal. 2019) ............................................................... 11

*Wagner v. General Nutrition Corp.*,
    2017 WL 3070772 (N.D. Ill., July 19, 2017) ........................................ 10, 15

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
    2013 WL 5348377 (N.D. Ill. Sept. 24, 2013) ....................................... 13, 17

**Statutes**

47 U.S.C. § 227 ......................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 .............................................................................. *passim*
Fed. R. Civ. P. 23(a) ....................................................................... 12, 16, 17
Fed. R. Civ. P. 23(a)(3) ............................................................................ 9
Fed. R. Civ. P. 23(b)(3) ..................................................................... 16–17
Fed. R. Civ. P. 23(f) ........................................................................... 18–19
Fed. R. Civ. P. 26(b)(1) ............................................................................ 4
Fed. R. Civ. P. 37(a) ................................................................................. 1
Local Rules 37.2 and 37.3(a) ................................................................... 1

Plaintiff, Radha Geismann M.D., P.C. ("Plaintiff"), submits this Memorandum of Law in Support of its Motion to Compel, pursuant to Federal Rule of Civil Procedure 37(a) and in accordance with Local Rules 37.2 and 37.3(a).

## Background

On September 3, 2014, Plaintiff filed its Corrected First Amended Class Action Complaint (the "Complaint") alleging Defendant ZocDoc, Inc. ("ZocDoc") sent "unsolicited advertisements" by fax to Plaintiff and a class of other persons in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), and the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227, *et seq.* (Doc. 39, Compl. ¶¶ 1, 2, 13, 22).   The Complaint alleges ZocDoc sent faxes (plural) advertising its products and services to Plaintiff, examples of which are the faxes attached to the Complaint as Exhibits A and B (the "Faxes"). (*Id.* ¶¶ 13, 21, 22). The Complaint further alleges that the faxes ZocDoc sent, including Exhibits A and B, were unsolicited and lacked compliant opt-out notices.  (*Id.* at ¶¶ 18-20).  Finally, the Complaint alleges that ZocDoc had a practice of sending unsolicited fax advertisements.  (*Id.* ¶ 1). Thus, the Complaint unequivocally put ZocDoc on notice that Plaintiff is not restricting the scope of the challenged misconduct to Exhibits A and B.  The Complaint proposes the following class definition:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendants any telephone facsimile transmissions of material making known the commercial existence of, or the marketing qualitative statements regarding any property, goods, or services (3) with respect to whom Defendants cannot provide evidence of prior express invitation or permission for the sending of such faxes, (4) with whom Defendants does not have an established business relationship, or (5) which did not display a proper opt out notice.  (*Id.* ¶ 32).

On June 6, 2019, Plaintiff served ZocDoc with its first set of interrogatories and requests to produce. Plaintiff's discovery seeks, *inter alia*, all fax advertisements sent by or on behalf of Defendants during the "Relevant Time Period," (*i.e.*, the four-year period prior to the filing of this

Complaint), all agreements and charges regarding said fax advertising, and transmission logs for broadcasts of fax advertisements transmitted during the Relevant Time Period.

For example, **Interrogatory No. 2** asks ZocDoc to:

Identify, by date(s) sent and subject matter, all documents (including but not limited to the two faxes attached to Plaintiff's Corrected First Amended Complaint as Exhibit "A" and Exhibit "B") sent by facsimile transmission during the Relevant Time Period that either (a) were used for any advertising or promotional purpose; or (b) which advertised any property, goods, or services, and describe in detail the content of each different document sent by fax and the date(s) when each different document was sent by such transmissions and the time period during which each different document was sent.

ZocDoc's **Answer to Interrogatory No. 2** states as follows:

ZocDoc objects to Interrogatory 2 to the extent it calls for a legal conclusion as to whether certain faxes had an advertising or promotional purpose or advertised any property, goods, or services. ZocDoc further objects that requiring ZocDoc to list all "documents" sent by fax that could be considered advertising over a period of more than nine years is overly broad, unduly burdensome, not proportional to the needs of the case, and not required by the Federal Rules of Civil Procedure. ZocDoc further objects that this Interrogatory exceeds the scope of the Court's Order at the June 14, 2019 hearing limiting discovery at this stage to class discovery. (ECF No. 103). Subject to and without waiving those objections, ZocDoc directs Plaintiff to the documents that will be produced by ZocDoc.

In **Request for Production No. 1**, Plaintiff asked ZocDoc to produce:

Each different form of any document that promotes, advertises, announces, or describes the commercial availability of, or quality of, any property, goods, or services of Defendant which was sent by facsimile during the Relevant Time Period.

ZocDoc's **Response to Request for Production No. 1** states:

ZocDoc objects to this Request to the extent it calls for a legal conclusion as to whether certain faxes had an advertising or promotional purpose or advertised any property, goods, or services. ZocDoc further objects that requiring ZocDoc to provide all "documents" sent by fax that could be considered advertising over a period of more than nine years is overly broad, unduly burdensome, not proportional to the needs of the case, and not required by the Federal Rules of Civil Procedure. ZocDoc further objects that this Request exceeds the scope of the Court's Order at the June 14, 2019 hearing limiting discovery at this stage to class discovery. (ECF No. 103). Subject to and without waiving these objections, ZocDoc directs Plaintiff to the documents that will be produced on a rolling basis.

In **Request for Production No. 14**, Plaintiff asked ZocDoc to produce:

For any document referred to in Request No. 1, all documents that indicate or may show the number of the transmissions, via facsimile by or on behalf of Defendant to telephone numbers during the Relevant Time Period.

ZocDoc's **Response to Request for Production No. 14** states:

ZocDoc objects that this Request relies on the otherwise objectionable Request 1. Subject to and without waiving this objection, ZocDoc directs Plaintiff to the documents that will be produced on a rolling basis upon entry of an appropriate protective order.

And in **Request for Production No. 27**, Plaintiff asked ZocDoc to produce:

All documents that identify the persons and fax numbers which were sent by fax any document(s) by fax during the Relevant Time Period.

ZocDoc's **Response to Request for Production No. 27** states:

ZocDoc objects that this Request exceeds the scope of the Court's Order at the June 14, 2019 hearing limiting discovery at this stage to class discovery. (ECF No. 103). ZocDoc further objects that requiring ZocDoc to produce this material is overly broad, unduly burdensome, not proportional to the needs of the case, and not required by the Federal Rules of Civil Procedure.

The documents ZocDoc subsequently produced "on a rolling basis" were limited to Exhibits A and B, except for the transmission logs, where none were provided.

Pursuant to Local Rule 37.2 and this Court's individual practices, Plaintiff submitted a request for a pre-motion conference regarding ZocDoc's discovery answers. (Doc. 111). In written response, ZocDoc argued that its discovery production should be limited to Exhibits A and B and objected to the release of any transmission logs regarding fax advertisements, including the transmission logs for Exhibits A and B. (Doc. 112). Unable to resolve these differences, Plaintiff files the instant motion.

### Argument

Plaintiff's Complaint challenges ZocDoc's practice of sending unsolicited fax advertisements in violation of the TCPA during the relevant class period. Accordingly, Plaintiff

is entitled to discovery as to all fax advertisements sent by or on behalf of ZocDoc during the relevant class period.  ZocDoc's attempt to limit discovery to Exhibits A and B is a dressed-up attack on class certification through the simple (and impermissible) expediency of denying Plaintiff the discovery it needs to support its motion for class certification as to the class alleged.

### A.      Standards for motion to compel

It is well-settled that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Christine Asia Co. Ltd. v. Alibaba Group Holding Ltd.*, 327 F.R.D. 52, 53 (S.D.N.Y. 2018).  The information sought "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Rather, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"[A] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Fort Worth Employees' Ret. Fund v. JP Morgan Chase & Co.*, 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013) (quoting *Compagnie Francaise d Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

### B.      Plaintiff has standing to challenge ZocDoc's practice of sending fax advertisements in violation of the TCPA and is entitled to discovery of same.

In its pre-motion conference letter (Doc. 112), ZocDoc argues that Plaintiff lacks "constitutional and statutory standing" to serve as class representative for "any fax broadcasts that

didn't involve [Plaintiff]".   According to ZocDoc, discovery should be limited to the two fax broadcasts that transmitted Exhibits A and B.   As demonstrated below, ZocDoc's argument is incorrect and its attempt to limit the class definition during discovery is impermissible.

It is undisputed Plaintiff has Article III and statutory standing to press its TCPA claim as to Exhibits A and B.   In fact, Plaintiff is not even required to print the fax advertisements in order to maintain a claim under the TCPA.   *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1249 (11th Cir. 2015) (finding TCPA plaintiff had Article III standing where fax "occupied" his fax line, regardless whether he saw the fax or the fax printed from his machine); *see also Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (same); *Melito v. Experian Mktg., Inc.* 923 F.3d 85, 93 (2d Cir. 2019) (holding recipient of a single text message had Article III standing to bring a TCPA action).

ZocDoc's effort to limit the scope of the proposed class to Exhibits A and B prior to its disclosure of any other fax advertisements sent during the class period is premature.   The scope of the class, and whether Plaintiff is an adequate representative as to other faxes sent during the class period, is an issue to be addressed by this Court in ruling on Plaintiff's motion for class certification, and not at the discovery stage.   *See Medina v. Enhanced Recovery Company, LLC*, 2017 WL 5196093, at *4 (S.D. Fla. Nov. 9, 2017) (court required production of debt collection calls made to any customer during the relevant time period in a TCPA call case, holding that during discovery, "the question before the Court is not whether the class is certifiable, but whether Plaintiffs are entitled to discovery.   Plaintiffs are entitled to the opportunity to explore and obtain information relevant to the Rule 23 requirements – numerosity, commonality, typicality, and adequate representations – in order to meet their burden on these issues").   Stated differently, Plaintiff's standing to represent the putative four-year class is not derived from the injuries of other

putative class members, as implied in ZocDoc's arguments.  Rather, Plaintiff's injury (and that of the putative class) arises out of ZocDoc's practice of sending fax advertisements in violation of the TCPA.

The issue of standing and whether a TCPA plaintiff is entitled to discovery of all fax advertisements sent during the four-year class period was addressed at length by the Southern District of New York in *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers*, 36 F. Supp. 3d 417 (S.D.N.Y. 2014). In *Bais Yaakov*, the plaintiff moved to compel the defendants and their non-party fax broadcaster, Westfax, Inc. (which had been served a subpoena), to provide discovery on all fax advertisements sent by the defendants during the applicable four-year statute of limitations period, and not just to provide discovery on the single fax ad defendant sent to the plaintiff.  *Id*. at 419.

The court granted the motion, finding the argument that the plaintiff lacked standing to seek class-wide recovery for, and to seek discovery regarding, faxes other than the one it received, "leapfrogs over plaintiff's entitlement to discovery in aid of its future motion for class certification and advances arguments more properly addressed in the context of such a motion."  *Id*. at 419, 422.  The court explained that Article III standing is distinct from the issue of "class standing," *i.e.*, "standing to assert claims on behalf of others who received fax advertisements from Defendants which were solicited and/or unsolicited and contained 'a notice identical or substantially similar' to allegedly deficient opt-out notice in the fax advertisement received by Plaintiff."  *Id*. at 420.  The *Bais Yaakov* court relied on *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012), where the Second Circuit examined Supreme Court case law on the issue of class standing and concluded that "in a putative class action, a plaintiff has class standing if he [or she] plausibly alleges (1) that he [or she] personally

has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct underlines the same set of concerns as the conduct alleged to have caused injury to other class members of the putative class by the same defendants." *Bais Yaakov*, 36 F. Supp. 3d at 420-21 (emphasis added). The court further noted that in *NECA-IBEW*, the Second Circuit ruled the district court erred in requiring plaintiff to allege its injuries were identical to those suffered by the putative class members. *Id*. (citing *NECA-IBEW*, 693 F.3d at 162) (emphasis added). The court then held:

> Because Plaintiff in this case has satisfied the requirements for Article III standing, the issue of whether Plaintiff has standing to represent putative class members who received fax advertisements from Defendants other than the Criterion Fax [the fax sent to plaintiff], whether solicited or unsolicited, which also failed to include the opt-out notice required by the TCPA and GBL [New York statute], is an issue to be decided on a motion for class certification.

*Bais Yaakov*, 36 F. Supp. 3d at 421.

The *Bais Yaakov* court then turned to defendants' argument that "a litigant does not get discovery to see if it has a claim, and that Plaintiff was only entitled to discovery of other fax advertisements if the allegations in the Complaint were sufficient to support such a request." *Id*. at n.8. Specifically, defendants challenged allegations made on "information and belief" that over 5,000 unsolicited faxes or faxes sent without compliant opt-out notice were sent by defendants, arguing that the plaintiff's "conclusory allegation" was insufficient to allow the plaintiff to "seek discovery concerning" faxes it did not personally receive "because Plaintiff has not alleged an injury with respect to faxes other than the Criterion Fax" and "only has standing to assert a TCPA claim based on, and seek discovery concerning, the Criterion Fax." *Id*. The district court reiterated that a named plaintiff's injury does not have to be identical to that of a putative class member's in order for the named plaintiff to have class standing, and held:

> [T]he issue of class standing is not the same as the issue of whether or not Plaintiff has succeeded in stating a claim.  Given that the identity of the parties to whom

other fax advertisements were sent by, or on behalf of, Defendants is information that is uniquely within Defendants' and Westfax's knowledge, Plaintiff could only make its allegations in paragraphs 16–17 of the Complaint "upon information and belief." Hence, these allegations are sufficient to support the requests for discovery concerning other fax advertisements, which discovery is relevant to the future determination of the issue of class certification.

*Id*.

In short, Plaintiff is entitled to discovery as to the class alleged, including all fax advertisements sent by or on behalf of ZocDoc during the four-year class period. ZocDoc impermissibly conflates the scope of discovery with the scope of the class to be certified. While ZocDoc is free to oppose certification of such a class at the certification stage, ZocDoc should not be permitted to deny Plaintiff the discovery it needs to support its Rule 23 motion relating to the class as defined in the Complaint.  ZocDoc's refusal to participate in discovery is an attempt to deny class certification as to fax advertisements that have neither been produced to Plaintiff nor presented to the Court is an attempt to obtain a "predictive ruling" about class standing, an issue to be determined on a future motion for class certification, like the attempt rejected in *Basis Yaakov*, 36 F. Supp. 3d at 422 n.9; *see also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 95-96 (2nd Cir. 2018) (holding that non-identical injuries of the same general character can support standing and, further, that whether a plaintiff can maintain a class action on behalf of class members who may have claims under different states' laws that generally prohibit the same conduct is an issue best addressed under Rule 23 rather than as a standing issue); *Physicians Healthsource Inc. v. Masimo Corp.*, 2019 WL 1966663, at * 2 (C.D. Cal. Feb. 27, 2019) (court in a TCPA fax case finding decision in *Bais Yaakov*, 36 F. Supp. 3d 417, persuasive and applying its rationale).

Plaintiff submits the foregoing discussion disposes of ZocDoc's reliance on *St. Louis Heart, Inc. v. Nomax, Inc.*, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015). In *Nomax*, also a

TCPA junk fax case, the court held that the plaintiff's subpoena, which sought the call detail records for all facsimiles (not just facsimile advertisements) was too broad, limiting it to the six faxes attached to the complaint. *Id.* at *2.  *Nomax* is inapposite.

First, Plaintiff here, unlike the plaintiff in *Nomax*, seeks discovery of other potential fax advertisements sent during the class period, and not all faxes regardless of subject matter.  Second, Plaintiff respectfully submits that *Nomax* was incorrectly decided. As noted in *Bais Yaakov*, only the defendant has knowledge of whether and how many fax advertisements were sent during the class period. Thus, the plaintiff in *Bais Yaakov* (and the Plaintiff in the instant case) were necessarily required to plead on information and belief. *Bais Yaakov*, 36 F. Supp. 3d at 421, n.8. Plaintiff has alleged that ZocDoc has a practice of sending fax advertisements, and that on information and belief, during the four-year class period, ZocDoc has sent other faxes in violation of the TCPA.  (Compl. ¶¶ 1, 13, 18-22).  The court in *Nomax* essentially required the plaintiff to prove its case before it could obtain discovery.  Such a requirement stands the discovery process on its head and would prevent Plaintiff from obtaining discovery that is indisputably relevant to the TCPA claim Plaintiff asserted.

Although unstated by ZocDoc, the issue it raises is in actuality a Rule 23(a)(3) typicality challenge, namely, whether Plaintiff's claims are "typical" of those of the rest of the class as to all faxes sent during the four-year class period.  While Plaintiff submits the answer will be yes, that is an issue to be determined at class certification, not discovery.  *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 797–98 (7th Cir. 2013) (plaintiff purchased only one model of allegedly defective washing machines, but common issues predominated for a class covering multiple models and production years); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (plaintiffs' claims typical even though they purchased only two

of "twenty-one different models" of washing machines); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (plaintiffs were typical, although defendant's packaging changed over time, where claims "all derive from a single course of conduct," and "[t]he same legal standards govern"); *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (typicality satisfied where defendant's debt-collection letters changed over time, but defendants "engaged in the same course of conduct" and claims pursued "same legal theory").[1]

This issue was recently addressed in an order granting class certification in a TCPA fax case in *Practice Management Support Services, Inc. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840 (N.D. Ill. 2018), *decertified on other grounds*, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018). In *Practice Management*, the plaintiff brought a TCPA class action based on the receipt of one fax sent by defendant advertising one of its shows. The plaintiff sought to certify a class of persons who were sent fax advertisements by the defendant over a certain time period which advertised the defendant's various shows. *Id.* at 844. There were 16 different fax advertisements, of which the plaintiff received only one. *Id.* at 844-45. The defendant opposed class certification arguing, in part, that the plaintiff's claim was not typical because it was sent only the single fax attached to the complaint while seeking to represent a class of people or entities sent separate fax advertisements on different dates. *Id.* at 850.

In rejecting the defendant's argument, the court noted that the Eastern District of Missouri rejected a similar argument in *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, 2013

---

[1] *See also Wagner v. General Nutrition Corp.*, 2017 WL 3070772, at *5–6 (N.D. Ill., July 19, 2017); *Mednick v. Precor Inc.*, 2014 WL 6474915, at *3–4 (N.D. Ill. Nov. 13, 2014) ("[P]laintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar"); *see also Mednick v. Precor, Inc.*, 320 F.R.D. 140, 146, 153 (N.D. Ill. 2017) (certifying class on same basis).

WL 6498245, at *1, *7 (E.D. Mo. Dec. 11, 2013).[2]  The court also cited *Keele*, 149 F.3d at 595, for the proposition that claims need only be based on the same course of conduct and legal theory to satisfy typicality; claims do not have to be identical.  *Id.* at 850.  Based on these findings, the court held that even though the plaintiff did not receive the same fax advertisements as other members of the putative class, typicality, nevertheless, was satisfied because the plaintiff's claim was based on the same course of conduct and legal theory as other members of the class.  *Id.* at 851-52. Notably, *Practice Management* distinguishes the Eleventh Circuit's decision in *Prado– Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1270 (11th Cir. 2000), where the plaintiffs sought to assert "ten substantive, classwide claims," as opposed to "a single TCPA claim resulting in the same basic injury across class members," as in this case. *Id.* at 851, n. 5.

In another recent TCPA fax case, the district court certified a class covering "34 fax templates," where the plaintiff received only 12 of those unique fax advertisements. *True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589, 607 (N.D. Cal. 2019). The defendant argued the plaintiff's claims were "atypical as to faxes it did not receive," and the court rejected that argument, holding the defendant "asks too much of the typicality requirement," which merely asks whether the representative's claims are "reasonably co-extensive with those of absent class members." *Id.* The court held that any "purported variations" among the 34 faxes were minor and were not "at all relevant to the claims themselves." *Id.* Without discovery allowing the plaintiff and the court to examine the 34 unique fax advertisements, however, the district court would not even have been able to make that determination at the class-certification stage.

---

[2] In *St. Louis Heart Ctr. v. Vein Centers for Excellence*, the defendant sent fax advertisements in 10 different fax broadcasts over two years targeting physicians.  2013 WL 6498245, at *1. While the plaintiff received a fax only in the last fax broadcast, the court found the plaintiff's claim typical for all the fax broadcasts because the defendant "engaged in a standardized course of conduct vis-á-vis the putative class members, including [the plaintiff] by faxing advertisements . . . to thousands of people at a time."  *Id.* at *1, *7.

Reduced to its essence, ZocDoc's "standing" argument is nothing more than a preemptive (and unsustainable) attack on Rule 23(a) commonality and typicality, underscoring the premature nature of ZocDoc's motion.[3] Moreover, Defendants engaged in the same course of conduct, and inflicted the same injury, as to Plaintiff <u>and</u> the proposed putative class, namely, sending fax advertisements in violation of the TCPA.  Thus, Plaintiff is entitled to discovery as to the class alleged, including all fax advertisements sent by or on behalf of Defendant during the four-year class period. *Practice Management*, 301 F. Supp. 3d at 850-52.  Whether Plaintiff can later satisfy Rule 23 requirements is an issue to be decided on a motion for class certification.

      **C.**      **Plaintiff's request for all fax advertisements transmitted by or on behalf of ZocDoc advertising ZocDoc's goods or services during the four-year class period is consistent with the allegations in the Complaint and the class Plaintiff seeks to certify.**

ZocDoc's objection to discovery of fax broadcasts beyond Exhibits A and B is premised on the false predicate that the Complaint is confined to those Exhibits.  It is not.  As stated above, the Complaint alleges ZocDoc sent faxes (plural) advertising its products and services to Plaintiff, which the faxes attached to the Complaint as Exhibits A and B (the "Faxes") are examples. (*Id.* ¶¶ 13, 21, 22). The Complaint alleges that the faxes ZocDoc sent, including Exhibits A and B, were unsolicited and lacked compliant opt-out notices.  (*Id*. at ¶¶ 18-20).  Finally, the Complaint alleges that ZocDoc had a practice of sending unsolicited fax advertisements.   (*Id.* ¶ 1). Again, the Complaint unequivocally put ZocDoc on notice that Plaintiff is not restricting the scope of the

---

[3] In fact, *Etter v. Allstate Insurance Co.*, 323 F.R.D. 308 (N.D. Cal. 2017), a case relied on by ZocDoc, further demonstrates this fact.  There, the court denied class certification regarding a fax advertisement that the plaintiff had no proof of receiving only after discovery for that fax advertisement was conducted.  323 F.R.D. at 311.

challenged misconduct to Exhibits A and B.  Further evidencing the scope of the Complaint is the proposed class definition:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendants any telephone facsimile transmissions of material making known the commercial existence of, or the marketing qualitative statements regarding any property, goods, or services (3) with respect to whom Defendants cannot provide evidence of prior express invitation or permission for the sending of such faxes, (4) with whom Defendants does not have an established business relationship, or (5) which did not display a proper opt out notice.

(*Id.* ¶ 32).  In sum, Plaintiff has identified the faxes that were sent to it, has alleged ZocDoc has a practice sending fax advertisements to Plaintiff and other class members, has alleged ZocDoc sent other faxes in addition to Exhibits A and B to Plaintiff and other class members in accordance with that practice, and has alleged a four-year class regarding ZocDoc's practice of sending fax advertisements.

Another case instructive as to the issue before the Court is *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. Sept. 24, 2013), a TCPA junk fax class action, wherein the court rejected the argument that plaintiff was not entitled to discovery of <u>all</u> fax advertisements sent during the class period. The defendant in *Whiteamire* argued discovery requests regarding faxes other than the one sent to plaintiff were premature because the requests sought information that was not necessary to determine whether a class should be certified.  *Id.* at *2.  In rejecting this argument, the court recognized plaintiff was <u>entitled to all of the fax advertisements sent during the class period</u>, stating as follows:

> Quill [defendant] argues that any requests for information beyond that concerning the named plaintiff are premature because they are not necessary for the Court to determine whether a class should be certified. We disagree. The district court judge did not bifurcate merits discovery from discovery related to class certification, and thus discovery is not limited to that which is relevant to a motion for class certification.
>
> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of

13

numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, <u>copies of all faxed advertising documents</u>, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.

As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.

*Whiteamire*, 2013 WL 5348377, at *3 (emphasis added).[4]

Similarly, in *State of Missouri ex rel. Coffman Group, L.L.C. v. Sweeney*, 219 S.W.3d 763, 765-66 (Mo. App. Ct. 2005), also a TCPA case, the court ordered production of all fax advertisements during the class period.  In *Sweeney*, defendant objected to discovery that sought fax advertisements for the four years prior to the filing of the class action complaint, arguing that such discovery was unduly burdensome and not reasonably calculated to lead to admissible evidence because, according to defendant, the complaint alleged only a single violation of the TCPA and the court had no authority to compel it to disclose information regarding any other fax sent on other dates.  *Sweeney*, 219 S.W.3d at 767.  The court disagreed, noting plaintiff had also alleged a putative class of potential thousands that have been injured by defendant's TCPA violations and that plaintiff should be allowed pre-certification discovery so that the plaintiff could be afforded the opportunity to prove the class certification prerequisites.  *Sweeney*, 219 S.W.3d at 767.  The court further noted that the discovery request was not overly broad in that it was limited to a four-year time frame, and it dealt with information regarding facsimile advertisements.  *Id.*

---

[4] In *Whiteamire*, the proposed class was as follows: "All persons who (1) on or after four (4) years prior to the filing of this complaint, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendants did not have an established business relationship ["EBR"] and, (5) which did not display a proper opt-out notice."   2013 WL 5348377, at *3.

Furthermore, courts have certified classes encompassing all faxes sent during the class period (and not just the fax attached to the complaint), even if not received by the named plaintiff. For example, in *Hinman v. M & M Rental Ctr.*, 545 F. Supp.2d 802, 808 (N.D. Ill 2008), the court certified the following TCPA class – "All persons who, on or after four years prior to the filing of this action, were sent, without permission, telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of defendant." Similarly, in *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc*., 2014 WL 6750690, at *7 (N.D. Ohio Dec. 1, 2014), the court certified the following TCPA class – "All persons who (1) on or after September 5, 2008, (2) were sent telephone facsimile messages inviting attendance at a Weight Loss Program, and (3) which did not display a proper opt-out notice." *See also Physicians Healthsource, Inc. v. Stryker Sales Corp*., 2013 WL 11326540, at *5-7 (W.D. Mich. Dec. 11, 2013) (certifying four-year TCPA junk-fax class); *Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594, 597-600, 602 (N.D. Ill. 2018) (certifying four-year TCPA junk fax class for 23 separate fax broadcasts where the named plaintiff only received a single fax from one of the broadcasts). As these cases demonstrate, Plaintiff is entitled to the discovery necessary to support the Rule 23 motion for the class it seeks to certify, namely, all persons who "on or after four years prior to the filing of this action," were sent ZocDoc's fax advertisements in violation of the TCPA. Compl., ¶ 32; *Whiteamire,* 2013 WL 5348377, at *3.

In short, ZocDoc's attempt to preemptively limit the proposed class through withholding discovery should be rejected. Plaintiff seeks information regarding ZocDoc's practice of sending fax advertisements, and whether such practice violates the TCPA.  The information sought in this motion is at the heart of Plaintiff's claims and necessary for class certification.  Accordingly, ZocDoc should be compelled to produce documents and information relating to all fax

advertisements sent during the relevant time period and allow the Court to then make an informed decision regarding adequacy of Plaintiff as class representative at class certification.

### D.      Plaintiff is entitled to transmission logs.

ZocDoc also objects to producing transmission logs for any fax advertisement broadcasts, including the broadcasts for Exhibits A and B. In its zeal to prevail on this objection, ZocDoc questions the integrity of counsel for Plaintiff.  ZocDoc's objection is not well-founded and its misguided questioning misses its mark and cannot serve as a basis to deny Plaintiff relevant discovery.

First, there can be no question that fax transmission logs are relevant.  Courts have consistently held that in the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, such information is relevant to Rule 23(a) requirements of numerosity, commonality, and typicality and Rule 23(b)(3) requirement of predominance. *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017) (quoting *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 545 (6th Cir 2014)); *Progressive Health & Rehab Corp. v. Quinn Medical, Inc.*, 2018 WL 2904547, at *3 (S.D. Ohio June 11, 2018).

In *Quinn Medical*, the plaintiff filed a putative class action against the defendant for sending fax advertisements in violation of the TCPA.  *Id.* at *1.  During discovery, the plaintiff filed a motion to compel seeking the production of fax transmission logs that identify the fax numbers of each successful recipient for 26 at-issue fax broadcasts.  *Id.*  The defendant refused to produce the logs, arguing that they were not relevant and that the real reason counsel for plaintiff seeks the information contained in them is to identify potential new clients.  *Id.* at *2.  The court granted the motion and compelled production, holding that "the information contained in the at-

issue transmission logs could bear on the Rule 23(a) requirements of numerosity, commonality, and typicality as well as predominance and implied ascertainability requirements in Rule 23(b)(3)." *Id.* at *3. The court rejected the defendant's objection based on privacy concerns and speculation regarding the use of the information, noting the existence of the parties' stipulated Confidentiality Agreement.[5]  *Id.* at *4. Accordingly, the logs at issue in this case are relevant and need to be produced, either by ZocDoc or its fax broadcaster, Intellicomm, which ZocDoc instructed not to comply with Plaintiff's subpoena for documents and data, (evidencing ZocDoc's Rule 34 "control" of said documents)..

Second, as the holding in *Quinn Medical* makes clear, the transmission logs are relevant to demonstrating numerosity, typicality, and commonality. This renders ZocDoc's refusal to provide the logs as nothing more than an attempt to obtain a ruling on class certification while denying Plaintiff the information needed for such a motion. *See Whiteamire Clinic*, 2013 WL 5348377, at * 3 ("the Court cannot permit [defendant] on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified."). As stated, a Protective Order has been entered in this matter (Doc 108); there is simply no sustainable rationale for ZocDoc to deny Plaintiff this relevant information.

Third, and relatedly, in TCPA class action cases, it has been held that disclosing names and contact information of the proposed class is commonplace. *Haghayeghi v. Guess?, Inc.*, 168 F.Supp.3d 1277, 1281 (S.D. Cal. March 10, 2016). Furthermore, the discovery Plaintiff seeks has been routinely compelled and produced. *See, e.g., Critchfield Physical Therapy, P.C. v. Techhealth, Inc.*, 2013 WL 791860 at * 4 (E.D. Mo. Mar. 4, 2013) (court required production of spreadsheet with the full names and fax numbers subject to a protective order); *Henderson v.*

---

[5] The provisions of the Confidentiality Agreement relied upon by the Court are similar to the provisions of the Protective Order entered here.  (Doc. 108).

*United Student Aid Funds, Inc.*, 2015 WL 4742346 at *7 (S.D. Cal. July 28, 2015) (court held that request for the outbound call list is reasonably calculated to identify the recipients and number of calls made during the class period, and thus relevant to establish numerosity and commonality; court further held that the request for telephone numbers used to contact debtors is reasonably calculated to identify each instance of an improper call and directly relates to the plaintiff's individual and class TCPA claims); *Brodsky v. Humana, Inc.*, 2009 WL 1956450, at *2 (N.D. Ill. July 8, 2009) (finding telephone records for each telephone line used to send improper facsimile transmissions on the defendant's behalf relevant to the plaintiff's individual and class TCPA claims); *Houhgton Mifflin*, 36 F.Supp.3d at 421 (court required production of all facsimile advertisements sent by the defendant during the relevant time period finding that such documents would be relevant to the plaintiff's future motion for class certification).

Finally, any concerns regarding use of discovery in this case is addressed by the Protective Order and such concerns should not serve as a reason to deny relevant discovery.  Nor should ZocDoc's attempt to impugn counsel for Plaintiff.  ZocDoc questions the integrity of Plaintiff's counsel to oppose discovery, relying on *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011) and its progeny.  This reliance is misplaced.

The Seventh Circuit's decision in *Creative I* in a Rule 23(f) petition without a response from plaintiff, vacated a class certification decision but did not reverse it. ZocDoc fails to note that on remand the district court in that case again certified the class, expressly rejected the same attacks on Plaintiff's counsel as ZocDoc makes here, found that Caroline Abraham did not produce the evidence in reliance on a promise, held there was no basis to treat the information as confidential, and further held that the defendant's arguments were "pure sophistry." *Creative Montessori*

*Learning Center v. Ashford Gear, LLC*, 2012 WL 3961307 at *2 (N.D. Ill. Sept. 10, 2012) ("*Creative II*").

In his subsequent decision in *Creative II*, the district court noted that the Seventh Circuit had issued its ruling "despite receiving no response from plaintiff to the Rule 23(f) petition, and apparently accepting defendant's factual statements as true." *Creative II*, 2012 WL 3961307, at *1. The district court noted that on remand he had reviewed "hundreds of pages of supplemental submissions," and concluded "that there is no evidence to suggest that counsel will not loyally represent the class, and no evidence to suggest in any way that counsel will put their own interests ahead of those of the class." *Id*.

The court (Judge Gettleman) further explained that in his original opinion he had "<u>assumed</u> that class counsel had violated an agreement with Abraham, but concluded that the violation was not sufficient to cast doubt on counsel's adequacy." *Id*. at *2 (emphasis added). After review of additional evidence on remand, Judge Gettleman concluded that his earlier "assumption" of misconduct with regard to Ms. Abraham was <u>incorrect</u>:

> The evidence submitted in support of the supplemental motion proves, however, that counsel breached no such agreement. The record demonstrates that while attempting to obtain materials informally from Abraham, counsel agreed to keep confidential any information provided. But Abraham refused to provide any information informally, forcing counsel to invoke the discovery process by issuing subpoenas in *Cy's Crabhouse* and other pending cases. Indeed, the lists were never produced by Abraham, but by her adult son Joel Abraham and his lawyer, Eric Ruben, pursuant to subpoenas. <u>Ruben has admitted that he turned over the records without attempting to assert any claim of confidentiality. Thus, it appears that class counsel did not violate any confidentially order of a court, or any informal agreement with Abraham.</u>

> It should be noted that Abraham was not seeking confidentiality to protect her business, her clients, or even recipients such as plaintiff. She was simply trying to protect herself from further lawsuits. ... Thus, any suggestion that Abraham sought confidentiality to protect anyone but herself is pure sophistry, as is the notion that the B2B records were produced with an "understanding" of confidentiality.

19

*Id.* at *2 (emphasis added). The same panel of the Seventh Circuit that issued *Creative I* later denied leave to appeal from the second grant of class certification in that case.

The Seventh Circuit re-examined and rejected the same purported misconduct issues on the merits in a later appeal, in a case in which it found class counsel adequate and affirmed class certification. *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489 (7th Cir. 2013). In doing so, the *Reliable Money Order* court noted that at least six other courts at that time had thoroughly considered the same evidence and arguments asserted against class counsel in *Creative I*, and all six had found Plaintiff's counsel to be adequate to represent a TCPA class of persons who were sent fax ads through B2B. *Reliable Money Order*, 704 F.3d at 496. The Seventh Circuit later held this challenge to A+W's adequacy was "eliminated . . . on the merits" by *Reliable Money Order*, and it would be "pointless" to decide it again. *CE Design, Ltd. v. Cy's Crab House N., Inc.*, 731 F.3d 725, 730–31 (7th Cir. 2013); *see also Chapman v. Wagener Equities, Inc.*, 2014 WL 540250, at *15 (N.D. Ill. Feb. 11, 2014) (holding *Reliable Money Order* "put the issue to rest"); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 183 (E.D. Pa. 2014) (same).

In short, ZocDoc's attack on Plaintiff's counsel misses its mark, and its attempt to evade its discovery obligations on this basis should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should enter an order requiring Defendants to produce all documents and information relating to all fax advertisements sent by ZocDoc within the class period, and order Defendants to respond fully to Plaintiff's Interrogatory No. 2 and Requests for Production 1, 14, and 27.

Respectfully submitted,

**ANDERSON + WANCA**

By: /s/Ross M. Good
Ross M. Good (pro hac vice submitted)
Brian J. Wanca (pro hac vice submitted)
Ryan M. Kelly (pro hac vice submitted)
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
E-mail: rgood@andersonwanca.com

Aytan Y. Bellin, Esq.
**Bellin & Associates LLC**
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 358-5345
Email: aytan.bellin@bellinlaw.com

Max G. Margulis, #24325 (pro hac vice admitted)
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 – Residential
F: (636) 536-6652 – Residential
E-Mail: maxMargulis@MargulisLaw.com